## GLANN *vs.* YOUNGLOVE.

Where a married woman purchases property on her personal credit, the title becomes vested in her husband, and the property is liable to be taken on execution for his debts.

Where a married woman purchased a horse, in her own name, giving her individual notes for the price, and the husband immediately took the horse into his possession and used him in his own business for about a year; *Held* that this was *prima facie* evidence of a purchase by him; which would not be rebutted by evidence of the purchase by the wife in her own name, upon her personal individual credit; unless it was also made to appear that she had separate property which, upon the purchase, she charged with the payment of the purchase price; and that the vendor gave her the credit upon the faith of that arrangement.

In an action to recover the possession of personal property, where the property has been delivered to the plaintiff, and the defendant, in his answer, claims a return thereof, if the verdict is for the defendant, the plaintiff has a right to return the property instead of paying the value of it; which can only be required of him in case a return cannot be had. And it is his right to have the damages for the taking and withholding of the property assessed. The judgment should be accordingly.

The defendant has not the right to a judgment for the value of the property, or the return thereof, as he shall elect. The jury should be instructed to find for the defendant generally, and to assess the value of the property, together with the damages for the taking and withholding thereof.

THIS action was commenced October 13th, 1856, to recover the possession of a certain bay horse which the complaint alleged belonged to the plaintiff, and which the defendant wrongfully detained in his possession. The defendant in his answer denied each and every allegation of the complaint; and for a second defense set up a judgment in the supreme court in favor of one Veley, against John W. Lockwood, for $774.10, entered and docketed in the office of the clerk of the county of Steuben, August 26, 1856, and an execution issued thereon to the sheriff of the same county, by virtue of which the said sheriff levied upon and sold the horse in question; which at the time of the levy was the property of said Lockwood. That at the sale of the horse by said sheriff, the defendant was the purchaser, and that he is, and at the time of the commencement of this action was, the lawful owner of the said horse.

The cause was tried before JOHNSON, justice, and a jury, at the circuit court held in Steuben county in March, 1857. On the trial the plaintiff proved that the horse in question was owned by Jonathan Lockwood, a brother of John W. Lockwood, on and previous to October 7th, 1855. That being such owner, the said Jonathan Lockwood sold the said horse on the day last mentioned, to Nancy Lockwood, the wife of the said John W. Lockwood. That on the purchase of said horse by said Nancy Lockwood, she gave to the said Jonathan Lockwood her two promissory notes as sole maker, one for $50 and one for $90—the purchase price being $140. That the horse was used by her husband, the said John W. Lockwood, together with a gray horse of his own, in a team, down to the time of the levy and sale hereafter mentioned, in his ordinary business. That the said John W. Lockwood and Nancy his wife were married before the year 1848. That a day or two before the sale of the horse by the sheriff, the said Nancy Lockwood sold the horse in question to the plaintiff for $135, for which the plaintiff gave her his promissory note. That at the time of the sale of the horse to the plaintiff, the horse was in a barn occupied by the said John W. Lockwood. The plaintiff is a brother of the said Nancy Lockwood. The value of the horse was admitted to be $150. The plaintiff, after having proved a demand of the horse of the defendant, and his refusal to deliver him, rested. The defendant then gave in evidence the judgment and execution in favor of Veley against John W. Lockwood, as stated in the answer; and proved that by virtue of the execution a deputy of the sheriff of Steuben county levied upon a span of horses, and harness, and a lumber wagon, on the 25th day of September, 1856. The bay horse in question was one of the span. That he duly advertised the property levied upon, and sold the same on the 13th day of October, 1856, by virtue of the said execution. That at the sale the defendant bid off the horse in question and took him away. That the plaintiff was present at and for-

. bade the sale by the deputy sheriff, the defendant being present at the same time.

The evidence being closed, the justice decided that the purchase of the horse by the wife of John W. Lockwood on her personal credit vested the title of the property in her husband, and it was therefore liable to be taken on execution for his debt. That the defendant was entitled to judgment for the value of the horse, or the return thereof, as he should elect. The defendant thereupon elected to take judgment for the value of the horse. The justice then directed the jury to assess the value of the property, and render a verdict for the defendant for the value thereof. To which ruling and decision the plaintiff's counsel excepted. The jury thereupon assessed the value of the property at $150, and rendered their verdict, by which they found for the defendant the sum of $150. The plaintiff now moved for a new trial, on a bill of exceptions, which was ordered to be heard at the general term, in the first instance.

*Clark Bell,* for the plaintiff,

*B. Bennett,* for the defendant,

*By the Court,* WELLES, J. We think the ruling of the justice before whom the action was tried was correct, that the purchase of the horse by the wife of John W. Lockwood on her personal credit, vested the title of the property in the husband, and that it was therefore liable to be taken on execution against him for his debt. Upon the purchase by her, the horse went into the possession of her husband, and was used by him in his ordinary business, down to the time of the levy and sale under the execution against her husband, and until it was purchased at the sheriff's sale by the defendant, a period of about a year. There is nothing in the case tending to show that the wife of John W. Lockwood had, or owned, any separate estate, or, if she owned any, that she ever agreed or

Glann *v.* Younglove.

intended to charge it with the purchase price of the horse. Her services, talents and capacity for business, and credit, all belonged to her husband, and the person from whom she purchased the horse, and to whom she gave the notes, must be deemed to have relied upon one or all of these for payment, or upon his legal claim against her husband, as upon a sale to him of the horse. Possibly his reliance was upon all these considerations together. Be that as it may, all that he could by possibility, in any event, expect in payment, must of necessity come from what belonged to the husband. The wife, under the circumstances of this case, is to be regarded as having purchased the horse as agent for her husband; and although he cannot be made liable, directly, upon the notes given by her, we entertain no doubt of his liability to the vendor for the value of the horse, as upon a sale thereof to himself. Immediately upon the purchase, he took the horse into his possession and used him in his own business until the horse was taken on the execution. This would be *prima facie* evidence of a purchase by him, which would not be rebutted by evidence of the purchase by the wife in her own name upon her personal individual credit; unless it was also made to appear that she had separate property, which upon the purchase she charged with the payment of the purchase price, and that the vendor gave her the credit upon the faith of such arrangement. The case is not distinguishable in principle, in this respect, from *Lovett* v. *Robinson and another,* (7 *How. Pr. Rep.* 105,) which we think presents a correct view of the law on the subject. And we can discover nothing in any of the authorities cited by the plaintiff's counsel at variance with that case.

We think, however, that the learned justice fell into an error in holding that the defendant was entitled to a judgment for the value of the horse, or the return thereof, at his election; and after the defendant had elected to take judgment for the value of the horse, in directing the jury to render a verdict for the

defendant for the value of the property as they should assess such value.

The code, § 277, provides that in an action to recover the possession of personal property, " if the property have been delivered to the plaintiff, and the defendant claim a return thereof, judgment for the defendant may be for a return of the property, or the value thereof in case a return cannot be had, and damages for taking and withholding the same." The answer of the defendant, to the complaint, concludes with a prayer or demand of judgment against the plaintiff, awarding the possession of the property to the defendant, together with $100 damages for the detention thereof by the plaintiff. The defendant had not the right of election, as held by the justice. The jury should have been instructed to find for the defendant generally, and to assess the value of the property, together with the damages for the taking and withholding thereof. It was the right of the plaintiff to return the property instead of paying the value of it, which could only be required of him in case a return could not be had. And it was the right of the plaintiff to have the damages for the taking and withholding the property assessed ; and the judgment should be accordingly. If, however, the defendant will waive the damages for the taking and withholding the property, I see no objection to entering the judgment for him for a return of the property if a return can be had, and if a return cannot be had then that the defendant recover the value of the property as assessed by the jury

If, therefore, the defendant will stipulate to waive the damages as above, a new trial should be denied, and judgment should be entered as above suggested. Unless the defendant will so stipulate, there should be a new trial, on the ground of the misdirection in respect to the form of the verdict.

Ordered accordingly.

[CUYUGA GENERAL TERM, June 7, 1858.   *Welles, Smith* and *Johnson,* Justices.]