POLLY WOODBECK *vs.* JAMES HAVENS, executor &c.

An agreement made previous to 1860, between a married woman, with the knowledge and consent of her husband, and a third person, for personal services to be rendered by her to the latter, who agrees that she shall be paid what her services are reasonably worth, gives to the wife no title to her earnings, in her own right. In law they belong absolutely to the husband, and the promise to pay her is, in law, a promise to pay the husband.

The common law still controls the relation and rights of husband and wife, except where those rights have been modified or changed by statute.

There was no statute in this state, giving a married woman the right to perform labor or services on her sole and separate account, until that of March 20, 1860. And that statute does not operate to divest a husband of his right to the wife's earnings for services previously rendered.

A wife cannot maintain an action to recover pay for her services, as trustee of an express trust; there being in respect to such claim, no such relation between husband and wife as trustee and *cestui que trust*.

APPEAL from a judgment entered upon the report of a referee. The action was commenced by the plaintiff for services performed by her for the defendant's testator, John Shoemaker, deceased, in his lifetime, from the first day of April, 1853, to the 5th day of July, 1859. The answer of the defendant claims that the plaintiff, Polly Woodbeck, is a married woman, the wife of one John Woodbeck, and has been during the whole period in which the services have been performed; that she lived and cohabited with him during that time; and that the said John Shoemaker and the said John Woodbeck entered into a contract to work said John Shoemaker's farm on shares, and that he and his wife should reside with the said Shoemaker, and as a part of the consideration that the said plaintiff should be employed in doing the necessary housework of said John Shoemaker; and that said John Woodbeck should have a share of the grain raised on the farm as a full compensation for such services. The issue above joined was referred to David B. Prosser, Esq. before whom it was tried, and judgment ordered against the defendant for $465.20. It was admitted and proved on the trial that the plaintiff was married to John Woodbeck prior

to the 1st day of April, 1853, with whom she has lived and cohabited ever since; that Woodbeck worked the farm of the said John Shoemaker, deceased, from the first day of April, 1853, until after the 5th day of July, 1859, and the plaintiff proved that said Shoemaker, during the time she resided at the house of said Shoemaker with her husband, acknowledged that he had promised to pay her for her services during the time aforesaid. After the plaintiff had rested, the defendant made a motion for a nonsuit, on the ground that at the time the services were rendered, and at the time the action was commenced, the plaintiff was and still is a married woman, the wife of John Woodbeck, and that she could not sustain the action for her services, as the value of her services belonged to her husband, in whose name the action should have been brought; which motion the referee refused to grant, holding that the action was properly brought. After some evidence was given by the defendant, the action was submitted to the referee, who reported among other things, as matter of fact, that the plaintiff prior to the first day of April, 1853, was married to John Woodbeck, with whom she has lived and cohabited ever since, and is still living and cohabiting with him as her husband; that she resided with her said husband on John Shoemaker's farm with the said Shoemaker's family, Woodbeck, the plaintiff's husband, working the farm on shares, under a parol or verbal agreement by which the deceased agreed to board him; that the plaintiff from the first day of April, 1853, to the time of the death of the testator, worked in the house and had charge of the household affairs, &c. ; that the work was done under an agreement between her and said Shoemaker that she should be paid therefor what her services should be reasonably worth, and that the agreement was known to Woodbeck, who made no objection; that the plaintiff under that agreement worked for the deceased three hundred and twenty-five weeks and five days; that her services were worth $1.25 a week for three hundred and twenty

weeks and five days of said time, and for the residue $3.00 a week; that the plaintiff's claim was duly presented to the defendant, &c. The referee found upon such facts the following conclusions of law: That the defendant's testator was justly indebted to the plaintiff for the work done under the agreement, in the sum of $415.89, which remains unpaid; and that the defendant as executor, &c. is justly indebted to the plaintiff, &c. with interest &c., and that the plaintiff was entitled to judgment for the same; to which conclusions of law the defendant excepted.

*Seeley & Wolcott*, for the appellant.

*D. J. Sunderlin*, for the respondent.

*By the Court*, JOHNSON, J. This action cannot be maintained unless it can be shown that the indebtedness for the services was to the plaintiff in her own right, and not to her husband. It is not a question as to whether the plaintiff is a proper party to the action merely, but the real question is, whether the defendant is in law indebted to her. The plaintiff was a married woman, living with her husband at the time the services were rendered for which this action is brought. She was the daughter of the testator, and her husband worked the farm of the testator upon shares. The referee finds as matter of fact, that from the first of April, 1853, up to the time of the death of the testator on the 5th of July, 1859, the plaintiff worked in his house, and had charge of the household affairs, nursed and took care of the deceased and his wife, who were quite aged; the testator at the time of his death being upwards of eighty years of age, and his wife between seventy and eighty. The referee further finds that this work, labor and care were all "done under an agreement entered into between the plaintiff and the deceased that she should be paid therefor what her services were reasonably worth; that said agreement was made with

the knowledge of the plaintiff's husband, without any objection on his part." This agreement gave the wife no title to the earnings, in her own right. In law they belonged absolutely to the husband, and the promise to pay her was in law a promise to pay the husband and no one else. It does not need the citation of authorities to prove that by the common law the husband and wife are but a single person, and that during coverture the husband is entitled to all the services and earnings, of the wife, as well as her personal estate, which vests in him absolutely the moment it comes into his possession, as one of his marital rights. And being but a single person in law, they are, for that reason, incapable of entering into any contract whatever, with each other. In *Glann* v. *Younglove*, (27 *Barb.* 480,) this court held that personal property purchased upon the sole credit of the wife, she having no separate estate, vested in the husband, and became liable to be sold for his debts. The common law still controls the relation and rights of husband and wife in all respects, except where those rights have been modified or changed by statute. There was no statute giving a married woman the right to perform labor or services on her sole and separate account, in this state, until that of March 20th, 1860. (*Sess. Laws of* 1860, *ch.* 90.) This was after the services had all been rendered, and that statute could not operate to divest the husband of his right to her earnings. It follows from this, that the plaintiff has no right to these earnings which can be enforced in an action at law, nor indeed, in equity. She has no more right to collect the debt than any other third person. For although the agreement was with her, and she was to be paid, she was incapable of entering into any such contract on her own account, at the time, and could acquire no separate right by it. The assent of the husband was nothing, in law, other than that she might labor on his account and receive the money for him, as his agent; even if the fact found can be construed into a consent that the money might be paid directly to her.

She could not then take any such right as is now claimed for her by gift from her husband. The idea that she can maintain the action as the trustee of an express trust, as suggested by the plaintiff's counsel, is wholly inadmissible. In respect to this claim, there is clearly no such relation between the plaintiff and her husband as trustee and *cestui que trust.* They were but one person in law, in regard to it, and that person was the husband. The plaintiff stands, therefore, as a party having no legal or equitable right to the demand whatever, and cannot maintain the action. It is sufficient to defeat the action to show that the plaintiff is without legal right. We have as yet, I believe, no statute authorizing a wife to bring and maintain an action to collect the demands due her husband; and it is quite unnecessary for the courts to undertake to go in advance of the legislature in conferring new and extraordinary rights upon the wife, or in merging the rights of the husband in the wife.

The judgment must therefore be reversed, and a new trial granted, with costs to abide the event.

[Monroe General Term, March 7, 1864. *Welles, J. C. Smith* and *Johnson,* Justices.]