ADJUDGED IN

# THE PREROGATIVE COURT

## OF THE STATE OF NEW JERSEY,

## MAY TERM, 1864.

HENRY W. GREEN, ESQ., ORDINARY.

ZEPHANIAH DILTS and others, appellants, and MARY STE-
VENSON, administratrix of Samuel W. Stevenson, de-
ceased, respondent.

1. The inventory and appraisement prescribed by the acts of 1856 and
1860, (*Nix. Dig.* 273, 274,) operate as a substitute for the inventory and ap-
praisement prescribed by the fourth section of the act of 1851, (*Nix. Dig.*
270,) and by the tenth section of the act of 1846, (*Nix. Dig.* 277.)

2. In all cases where the intestate dies, leaving a wife or child entitled to
the benefit of the provisions of the acts of 1856 and 1860, (*Nix. Dig.* 273,
274,) the inventory must be made by appraisers appointed by the surrogate,
not selected by the administrator, who are to be sworn by him before
entering upon the performance of their duties, and to execute their office
in pursuance of the requirements of the act of 1856.

3. A promissory note taken in the name of the intestate, should not be
omitted from the inventory upon the claim of the wife that it is hers, being
in payment of the sale of a gift to her from her husband.

4. Gifts of chattels by the husband to the wife are void at law, though
they may be sustained in equity. But even in equity, where a widow

Dilts et al. *v.* Stevenson.

seeks to establish a gift from her husband in his lifetime, she must adduce evidence beyond suspicion, and nothing less will do than a clear irrevocable gift, either to some person as trustee, or by some clear and distinct act of his, by which he divested himself of the property and engaged to hold it as trustee for the separate use of his wife.

5. To constitute a perfect gift, the donor must part with the possession and dominion of the property. And if the thing given be a chose in action, the law requires an assignment, or some equivalent instrument, and the transfer must be actually executed.

6. The act for the better securing the property of married women, confers no power on the wife to take real or personal property directly by gift from her husband.

7. To bring property claimed by the wife within the protection of the statute, it must have been acquired by her in her own right, either before or after marriage. A purchase by her, or a mere gift by the husband to the wife, or a declaration by the husband that the property is hers, will not avail to defeat the claim of creditors or of the next of kin, after the death of the husband.

*Mr. A. V. Van Fleet,* for appellants.

*Mr. Richey,* for respondent.

THE ORDINARY. The administratrix having caused to be made and filed in the office of the surrogate of the county of Mercer, an inventory and appraisement of the estate of the intestate, exceptions thereto were filed by the intestate's next of kin. The cause was heard before the Orphans Court, under the provisions of the statute, (*Nix. Dig.* 579, § 16,) and the exceptions dismissed with costs. From that decree the exceptants have appealed.

The first exception to the inventory is, that the persons who assisted the administratrix in making the inventory and appraisement, had no authority to act as appraisers, not having been appointed and sworn by the surrogate. The second exception is, that one of the appraisers appointed by the surrogate to inventory and appraise the goods selected by the widow for the use of the family, made such inventory without having seen the goods so inventoried and appraised, and without knowing anything of their value.

On the tenth of September, 1862, the administratrix caused an inventory and appraisement of the entire estate of the intestate to be made by two disinterested freeholders. This inventory, proved by the administratrix and by the oath of one of the appraisers, was filed with the surrogate on the 12th of September. On the same day, on the petition of the administratrix, the surrogate appointed one of the original appraisers and a third person, to make an inventory and appraisement, under the provisions of the acts of 1851 and 1856, (*Nix. Dig.* 270, § 16, 273, § 35.) These appraisers having taken before the surrogate the oath prescribed by the statute, made an inventory and appraisement of the goods and chattels to the value of $200, selected by the widow for the use of the family of the intestate, which is filed with the surrogate. This latter appraisement the court very properly rejected as illegal, but sustained the first inventory and appraisement as legal and valid.

It is not questioned that the original inventory and appraisement were made in compliance with the provisions of the tenth section of the act of 1846, (*Nix. Dig.* 277,) and in accordance with immemorial and approved practice, prior to the act of 1851. The inquiry is, to what extent the ancient law and practice are affected by recent legislation. The provisions of the act of March 14th, 1851, (*Nix. Dig.* 269,) in no wise interfered with the duties of executors or administrators, prescribed by the act concerning executors. The statutes were not only upon different subjects, but the design and office of the inventory and appraisement prescribed by the fourth section of the act of 1851, were totally different from those of the inventory and appraisement required by the tenth section of the act concerning executors, (*Nix. Dig.* 277.)

But the scope of the act of 25th February, 1856, (*Nix. Dig.* 273), is much more extensive. It was evidently designed to embrace the provisions of two different statutes upon totally different subjects. The inventory and appraisement prescribed by the act appear to have been designed to perform a double office, and to operate as a substitute, not

only for the inventory and appraisement prescribed by the fourth section of the act of 1851, respecting executions, but also (in all cases coming within the purview of the act) for the inventory and appraisement required by the tenth section of the act respecting executors. The act requires that the appraisers shall be appointed by the surrogate, (not selected by the executor or administrator); that they shall act under the solemnities and obligation of an oath taken before entering upon the duties of their office; and that they shall appraise the property faithfully, honestly, and impartially, according to the true and intrinsic value thereof; thus protecting all the rights of the debtor's family and of creditors, and effecting all the purposes of the act respecting executions. The act also requires that the inventory and appraisement shall include all the property required to be inventoried and appraised by the tenth section of the act respecting executors, and shall be proved before the surrogate of the county where the deceased debtor resided at the time of his death, in the same manner as required by the said tenth section of that act. From the phraseology of the act, and from the proof of the inventory to be made before the surrogate, the inventory must, within the contemplation of the legislature, have been made and exhibited by the executor or administrator as well as by the surrogate; thus protecting the rights of all persons interested in the estate, and accomplishing all the purposes of the tenth section of the act concerning executors. By the fourth section of the act of 1856, all acts and parts of acts inconsistent with its provisions are repealed. The operation of this statute in all cases coming within its purview, must be to supersede the inventory and appraisement required by the tenth section of the act respecting executors. The inventory and appraisement prescribed by the later act perform all the offices and accomplish all the objects required by the prior statute. It is a rule of construction that if the later statute prescribe the only rule that should govern in the case provided for, it repeals the original act. *Sedgwick on Statutes* 124. This construction of the statute I am in-

formed has been adopted and acted upon by most of the surrogates of the different counties, and perhaps by all of them. No benefit could result, but on the contrary embarrassment and confusion, from having two inventories of the same property made by different appraisers. The act however applied only to the estates of debtors, who leave a family or a wife surviving. This was the construction given to it by the Supreme Court. As a consequence, where there was no execution against the property, and no apprehension of insolvency, the inventory required by the act of 1856, was necessarily filed. And if the estate subsequently proved insolvent, or the claims of creditors absorbed the personal estate, a second inventory became necessary. This gave rise to difficulty and embarrassment, especially where the property, as it frequently happens, had been disposed of, or placed beyond the reach of appraisers. By the act of 1860, (*Nix. Dig.* 274), which is a further supplement to the act respecting executions, it is enacted that the provisions of that act and of the several supplements thereto shall apply to the estate of any person who shall thereafter die intestate, leaving a wife or child him surviving, whether such person shall be a debtor or not. And goods and chattels of the estate of such deceased person to the amount of $200, shall be first reserved and set apart to and for the use of the family, before any distribution or other disposition shall be made thereof. All acts and parts of acts inconsistent with the provisions of the act of 1860, are, by the terms of the act, repealed.

It appears to me to be clear that the acts of 1856 and 1860, though both supplements to the act respecting executions, and primarily designed for the purpose of protecting the debtor's property against the claims of creditors, have not only indirectly changed, in a material degree, the statutes respecting the distribution of the estates of intestates, but that they have changed also the character of the inventory to be exhibited by the administrator, in all cases where the intestate dies, leaving a wife or child entitled to the benefit of the provisions of those statutes. The inventory of the estate in all

such cases must be made by appraisers, appointed by the surrogate, not selected by the administrator, who are to be sworn before they enter upon the performance of their duties, and to execute their office in pursuance of the requirements of the act of 1856. I have arrived at this conclusion after much solicitude and consideration, in view of the embarrassments that have already resulted, and must hereafter result from so material a change in a long established law of daily application. Nor have I been insensible to the incongruity of effecting such radical changes in the laws relating to the settlement and distribution of estates, by laws primarily designed for another and a very different purpose. But the terms of the statutes appear to me too clear to admit of doubt. The inventory and appraisement filed by the administratrix not having been made by appraisers appointed and sworn by the surrogate, as required by the statute, and having no power or authority to act, was not a legal appraisement of the property, and should have been so declared by the court. In this regard the exception of the appellant should have been sustained.

The third exception to the inventory, and one more materially affecting the rights of the parties, is that the inventory exhibited is not a true and perfect inventory of the estate of the intestate, for that divers goods, chattels, and credits, in the exception particularly specified, were not inventoried and appraised.

The evidence shows that at the date of the appraisement, there was in possession of the administratrix, a promissory note, given by one Nathaniel Hart to the deceased, for $250, which was not included in the inventory. It is claimed by the administratrix that the note was given for the purchase of a pair of horses which belonged to the wife, which were sold by the intestate to Hart, and the note taken in his own name. The evidence of the ownership of the wife consists exclusively, of repeated declarations made by the husband to different persons, that the horses belonged to the wife, that he uniformly spoke of them as her horses, that they were procured by the intestate in exchange for another horse which

the husband had given to the wife, that the exchange was made with the wife's approbation, and that the husband refused to make it till he had obtained the wife's consent to the bargain. Putting the evidence in the strongest light for the title of the wife, her title rests upon a gift of the chattel by the husband to the wife during coverture, and upon the constant recognition of that property as his wife's.

Gifts of chattels by the husband to the wife are *void at law*, though they may be sustained in equity. 1 *Williams on Ex'rs* 639; *Washburn* v. *Hale*, 10 *Pick.* 433; 1 *Roper on Husb. & Wife* 53; 2 *Ibid.* 152.

But, even in equity, where a widow seeks to establish a gift from her husband in his lifetime, she must adduce evidence beyond suspicion, and nothing less will do than a clear irrevocable gift, either to some person as trustee, or by some clear and distinct act of his by which he divested himself of the property and engaged to hold it as trustee for the separate use of his wife. *Walter* v. *Hodge*, 2 *Swanst.* 97; *McLean* v. *Longlands*, 5 *Vesey* 79; 1 *Williams on Ex'rs* 640; *Mews* v. *Mews*, 15 *Beav.* 529. And to constitute a perfect gift, the donor must part with the possession and dominion of the property. And if the thing given be a chose in action, the law requires an assignment or some equivalent instrument, and the transfer must be actually executed. 2 *Kent's Com.* 439.

The act for the better securing the property of married women, confers no power on the wife to take real or personal property directly by gift from her husband. Her inability at the common law to take property by such gift or grant, results from the nature of the marriage relation. The design of the statute was not to disturb the nature of that relation, further than to enable her *to receive and hold* real and personal property to her sole and separate use, so as not to be subject to the control, nor liable to the debts of her husband. It was not designed to confer upon her the power of acquiring her husband's property, but to protect her own. Nor was it designed to confer upon married women the power of

2 M *

*taking* property from persons other than the husband. *That* they might do .at common law. The difficulty was that when property was received by the wife, the husband was immediately invested with an interest in her estate, rendering it subject to his control and liable to his debts. It is apparent from the title as well as from the terms of the act, that this was the evil which the legislature designed to remedy. It does not even confer upon the wife the power of disposing of the property during coverture, nor disturb the marriage relation, or its consequent rights and duties in other respects. *Naylor* v. *Field,* 5 *Dutcher* 287; *Walker* v. *Reamy,* 12 *Casey* 410. To bring property claimed by the wife within the protection of the statute, it must have been acquired by her in her own right, either before or after marriage. A purchase by her, or a mere gift by the husband to the wife, or a declaration by the husband that the property is hers, will not avail to defeat the claim of creditors or of the next of kin, after the death of the husband. *Gamber* v. *Gamber,* 6 *Harris* 366; *Keeney* v. *Gould,* 9 *Harris* 355; *Bradford's Appeal,* 5 *Casey* 513; *Glann* v. *Younglove,* 27 *Barb.* 480.

There is no evidence in the cause sufficient to divest the property of the husband in the goods in question or to establish the title of the wife. The wagon and other chattels remained in the possession of the husband during his life, and at the time of his death. He exercised, so far as appears, absolute control over it. He sold the horses and took the note received in payment, in his own name. None of the property is shown to have been purchased or procured by means of the separate property of the wife. The property should have been included in the inventory, and the exception on this ground should have been sustained, even if the inventory had been in other respects valid.

The decree of the Orphans Court must be reversed, and the inventory and appraisement, to which exceptions have been filed, declared illegal, inoperative, and void. The exceptants are entitled to their costs in the court below, but not in this court. The original papers which have been sent up, are remitted with the cause to the Orphans Court.