# Richmond.

## YATES v. LAW.

### MAY 2d, 1889.

Absent, Richardson, J.

1. HUSBAND AND WIFE—*Purchases by wife—Presumption—Evidence.*—It is a presumption of law, not affected by the married woman's act, that husband owns all property in possession of wife, especially if living together; and to overcome it she must show by affirmative proof that the property is her own, and was acquired by means not derived from him, if he be insolvent; and this rule exists in favor of all persons having the right to have his property applied to pay his debts.

2. CHANCERY PRACTICE—*Multifariousness—Parties*—Where the principal object of the bill is to have the profits of a lease collected and applied to pay certain decrees against complainant and insolvent defendant, a prayer that accounts be taken to ascertain the rights of the parties under the lease, and the profits applied to pay the decrees and the balance according to the rights of the parties, does not make the bill multifarious, but the decree creditors should be made parties.

Appeal from decree of corporation court of Danville, rendered June 12, 1888, in the cause wherein A. M. Aiken, administrator of Lewis A. Yates, is complainant, and W. T. Law and others are defendants. At the hearing the bill was dismissed with costs to the defendants, and the complainant appealed. Opinion states the case.

*E. E. Bouldin* and *John W. Riely*, for the appellant.

*Withers & Barksdale*, for the appellees.

LEWIS, P., delivered the opinion of the court.

This is an appeal from a decree of the corporation court of the town of Danville. The record discloses the following facts:

In 1878 W. T. Law obtained from George Price a lease of certain property for ten years at an annual rent of $600 and the payment of all taxes assessed on the property, and took the lease to himself as "agent of P. B. Law, trustee for Sarah J. Law," who was the wife of the said W. T. Law. The property so leased was a warehouse in the town of Danville, used for the sale of tobacco, and much capital was necessary and many employees were required for the conduct of the business.

W. T. Law, after acquiring the lease, admitted Lewis A. Yates, the appellant's intestate, as a partner or a half owner, and some months afterwards they sub-let the property at a considerable profit. Law and Yates, for seven years thereafter, jointly managed and controlled the lease, and equally shared and divided the profits between them. Yates died in February, 1885, and after his death Law refused to account any longer for Yates's part of the profits of the lease.

Shortly before the latter's death, decrees were rendered by the said corporation court against Law and Yates for individual liabilities incurred by them, as executors and trustees under the will of George Price, deceased, for a considerable amount. Law has failed to pay anything on account of these decrees, and has left the burden to be borne by Yates's estate.

The present suit was brought by Yates's administrator for an account of rents and profits, and to have the residue, after paying the rent due to Price's estate, applied, first, to the payment of the above-mentioned decree, and then one half of the balance paid to Yates's estate. The bill charges that Law is insolvent, and that he had collected and appropriated to his own use the entire profits of the lease since Yates's death, and the prayer of the bill is for an injunction and a receiver, and

that the rents may be collected and properly applied under the direction of the court.

W. T. Law, P. B. Law, trustee, and Sarah J. Law are made defendants to the suit, and upon the filing of the bill an injunction was awarded. The defendants demurred, and also answered. In their answer they admit the insolvency of W. T. Law, but claim that the lease is the separate estate of the wife, Sarah J. Law. Depositions were taken, and when the cause came on to be heard, the bill was dismissed by the decree complained of.

The application of a few well-settled and familiar principles to the case, as disclosed by the record, will suffice to show that this decree is erroneous.

In a long line of cases, beginning with *Blow* v. *Maynard,* 2 Leigh, 29, this court has decided, with respect to post-nuptial settlements, that although such a settlement will be supported where it appears to have been made in execution of a fair contract, founded upon a valuable consideration; yet, from the relative situation of the parties and the convenient cover which such settlements afford a debtor to protect his property and impose upon the world, they are always watched with jealousy. Every such settlement, therefore, where the settler is indebted, is, as against his existing creditors, presumed to be voluntary and fraudulent, and will be so declared, unless those claiming under it can show the contrary; and this must be done, if at all, by legal and disinterested evidence, their own answers not being evidence in their favor, where no discovery, by way of evidence is sought of them. *William and Mary College* v. *Powell,* 12 Gratt., 372; *Price* v. *Thrash,* 30, *Id.,* 533; *Fink, Brother & Co.* v. *Denny,* 75 Va., 663; *Hatcher* v. *Crews,* 78 *Id.,* 465; *Perry* v. *Rhuby,* 81 *Id.,* 317; *Witz* v. *Osborn,* 83 *Id.,* 227; *Rixey* v. *Detrick,* 85 Va., 42.

The present case, it is true, is not a case of a post-nuptial settlement, but the doctrine of the cases just mentioned largely applies to it.

By the common law, marriage is an absolute gift to the husband of all the personal estate of which the wife is actually and beneficially possessed in her own right at the time of marriage, and such other personal estate as comes to her during coverture. And the principle embraces her earnings, or the products of her skill and labor, which the common law makes as absolutely the property of the husband as his own earnings. Burks, J., in *Campbell* v. *Bowles*, 30 Gratt., 652.

Hence the presumption of the law is—and this presumption is not affected by the married woman's act—that the husband is the owner of all the property, real and personal, of which the wife may be in possession during coverture, especially if they are living together as husband and wife; and to overcome this presumption, in a contest between the husband's creditors and the wife, she must show affirmatively that the property is her own, and that it was derived from a source other than her husband and in good faith, if he be insolvent, otherwise a wide door would be opened to fraud.

A leading case on the subject is *Seitz* v. *Mitchell*, 94 U. S., 580, which went from the supreme court of the District of Columbia, and in which the rule is thus stated: "Purchases of either real or personal property made by the wife of an insolvent debtor during coverture are justly regarded with suspicion, unless it clearly appears that the consideration was paid out of her separate estate. Such is the community of interest between husband and wife; such purchases are so often made a cover for a debtor's property; are so frequently resorted to for the purpose of withdrawing his property from the reach of his creditors and preserving it for his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is, and there should be, a presumption against her which she must overcome by affirmative proof." And after referring to a number of Pennsylvania cases, to the effect that in the case of a purchase by the wife after marriage, the burden is

upon her to prove distinctly that she paid for the property with funds not furnished by the husband, and that in the absence of such proof, the presumption is a violent one that the husband furnished the means of payment, the court said: " All these decisions were made after the enactment of a statute giving to married women rights of property as against the husband and his creditors, at least as broad as any which exist in the District of Columbia. And similar decisions have been made in other states where like statutes have been enacted; " citing *Switzer* v. *Valentine,* 4 Duer (N. Y.), 96; *Glann* v. *Younglove,* 27 Barb., 480; *Woodbeck* v. *Havens,* 42 *Id.,* 66; *Rider* v. *Hulse,* 24 N. Y., 372; *Connors* v. *Connors,* 4 Wis., 131; *Elliott* v. *Bentley,* 17 *Id.,* 610; *Edson* v. *Hayden,* 20 *Id.,* 682; *Duncan* v. *Roselle,* 15 Iowa, 501; *Cramer* v. *Redford,* 17 N. J. Eq., 367. See also, *Rose* v. *Brown,* 11 W. Va., 122; *Burt* v. *Timmons,* 29 *Id.,* 441.

Nor is the operation of the rule confined to creditors of the husband. In Bradford's Appeal, 29 Pa. St., 513, it was applied in a contest between the next of kin and the widow of a deceased husband, although the estate was solvent, and it applies, we take it, in favor of any person who has the right to have the property of an insolvent husband applied to the payment of his honest debts. It therefore applies to the present case, and with decisive effect, in favor of the appellant, who is remediless, save in a court of equity.

There is absolutely no proof that the lease in question was acquired with funds not furnished by the husband, or that the wife had any separate funds of her own whatever; nor is it even alleged in the answers that she had. The answers, indeed, do deny that the lease is the property of the husband, and aver that it is the separate property of the wife. But this was not enough. To repel the presumption that it was the husband's property, it was incumbent on the wife to distinctly aver and to clearly prove that it was purchased with her own separate means, or, at all events, that it was acquired by means other than her husband's. But here not even an attempt was

made to prove that she ever had any separate estate, or that she ever had any opportunity for obtaining money except from her husband, or that she in any way *bona fide* acquired the lease as her separate estate. And the fair inference from the record is, that neither she nor her alleged trustee ever heard of the lease before this controversy arose. It is certain that no trustee account has ever been settled and returned by him, and the answers admit that he has never had any management or control over the property, and that it has been managed and controlled exclusively by the husband, who has collected and appropriated the profits from it to his own use.

The very form of the lease is calculated to excite suspicion, being made to W. T. Law as agent for P. B. Law, trustee for Sarah J. Law, the wife. And the evidence, in addition to this, shows clearly, we think, an attempt on the part of the said W. T. Law to defraud not only his creditors, but Yates's estate as well. Soon after Yates's death he admitted the agreement to share with Yates in the lease, and did not deny its validity, but on one pretext and another put off a settlement, and finally attempted to repudiate the agreement altogether as being unauthorized and invalid, and to make his wife the beneficiary of his fraud. But such an effort will not be countenanced in a court of equity. The agreement is valid and binding, and must be enforced. To hold otherwise, under the circumstances of this case, would, indeed, be making fraud, as was said in *Seitz* v. *Mitchell*, "both profitable and easy." We lay out of the case the averment in the answers that the agreement was upon conditions which have never been complied with by Yates, not only because it is affirmative matter not supported by proof, but because the conduct of W. T. Law in dividing with Yates the profits of the lease for seven years without question, repels the idea that the agreement was conditional.

Nor is the objection well founded that the bill is multifarious. The principal object of the bill, which is in the nature of a bill *quia timet,* is to have the profits of the lease collected

and applied to the payment of the decrees against Law and Yates, already mentioned. And to accomplish this object, the prayer of the bill is, that the necessary accounts be taken to ascertain the rights of the parties, and after this has been done, that the profits of the lease be applied to the payment of the decrees, and the balance be disposed of according to the rights of the parties. These are clearly not such distinct and independent matters as render the bill multifarious.

In *Gaines* v. *Chew*, 2 How., 619, it is truly said to be impossible to lay down any rule, universally applicable, as to what constitutes multifariousness; that the court must exercise a sound discretion, each case being governed by its own circumstances; that it is desirable to avoid a multiplicity of suits, and that where there is no liability to injustice, the objection on the ground of multifariousness should not prevail.

The decisions of this court to the same effect are numerous. One of the latest on the subject is *Hill's adm'r* v. *Hill*, 79 Va., 592, in which case Judge Hinton, in delivering the opinion of the court, after quoting the remark of Lord Cottenham in *Campbell* v. *Mackey*, 1 M. & C., 603, that the court seems to have considered what was convenient in the particular circumstances, rather than to have attempted to lay down any absolute rule, said: "It would seem, therefore, that where the matters in controversy are not absolutely independent of each other, although distinct, and it will be more convenient to litigate and dispose of them in one suit, the objection on the ground of multifariousness should not prevail."

The bill, however, in the present case is defective for not making the creditors mentioned therein parties to the suit. But that is no ground for dismissing the bill. The appellant ought to have been permitted to amend the bill and make the necessary parties, and he may yet be permitted to do so. *Stephenson* v. *Taverners*, 9 Gratt., 398; 3 Pom. Eq., sec. 1417, *et seq.* The decree will, therefore, be reversed, and the cause

remanded to the court below for such further proceedings to be had therein, not inconsistent with this opinion, as may be necessary in order to a final decree.

LACY, J., dissented.

DECREE REVERSED.