𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

KINNIER'S ADM'R v. WOODSON & OTHERS.

June 24, 1897.

1. FRAUDULENT CONVEYANCES—*Presumption against wife of an insolvent husband—How overcome—Case at bar.*—In a suit by creditors of an insolvent husband to subject to the payment of their debts property acquired during the coverture and conveyed to the wife, although the presumption is that the husband furnished the consideration, and that the property is his, yet this presumption may be rebutted by proof, and it is rebutted by showing that the husband could not have furnished the consideration, and that the wife was engaged in business as a sole trader from which resources might reasonably be expected with which to make the purchase. In the case at bar it is at least shown that the consideration must have been furnished from some source other than the husband, and this is sufficient.

Appeal from a decree of the Corporation Court of the city of Roanoke, pronounced April 4, 1896, in a suit in chancery wherein the appellant was the complainant, and the appellees were the defendants.

*Affirmed.*

One of the deeds sought to be set aside was made in 1883, and the other two in 1887. The complainant's judgments were recovered in 1880. The other facts appear in the opinion of the court.

*John H. Christian* and *A. L. Payne,* for the appellant.

*W. A. Glasgow, Jr.,* for the appellees.

KEITH, P., delivered the opinion of the court.

Robert Kinnier, as the assignee of May & Co., filed a bill
in the Corporation Court of the city of Roanoke, in which he
represents that at the November term of the Circuit Court of
Lynchburg, 1880, May & Co., recovered a judgment for
$158.51, against one W. N. Turner and Pryor Woodson,
partners trading as W. N. Turner & Co., with interest from
August 4, 1880, till paid, and costs; and at the December
term, 1880, of the Corporation Court of the city of Lynch-
burg, May & Co. recovered against same defendants a judg-
ment for the sum of $160.58, with interest from July, 1880,
and costs; that said judgments were duly docketed in Lynch-
burg and Roanoke, and became liens on all the real estate of
Turner and Woodson; upon these judgments executions were
issued which were returned "no effects;" and that subse-
quently they were for value received assigned to him.

The bill further avers that since the recovery of the judg-
ments, Pryor Woodson has greatly prospered in business, and
has purchased real estate in the city of Roanoke and elsewhere,
but that, being much involved in debt, he has had all the deeds
made to his wife, Anna Woodson.   The bill charges that the
lots were all paid for with the money of Pryor Woodson, and
that the deeds were voluntary, and made to Anna Woodson,
his wife, with intent to hinder, delay, and defraud his credi-
tors; that Anna Woodson had no estate of her own, nor any
means whereby she could purchase such real estate; and that
she was never engaged in any business from which she could
accumulate sufficient means to purchase such property.   The
bill then prays that the lots may be subjected to the payment
of the judgments.

To this bill Pryor Woodson filed his answer, and denies
that since the recovery of the judgment aforesaid he has pros
pered in business, or that he has acquired any real estate in
his own name or that of his wife, or of any other person; but,
on the contrary, declares that since his removal to the city of
Roanoke he has not made more than enough for the support

of his family, and often not enough for that purpose.    He
avers that the land sought to be subjected by the bill was
purchased by his wife and paid for by her out of her earnings
as a sole trader, and that he had no interest in them what-
ever.

The answer of Anna Woodson admits the purchase of the
ots named in the bill, and their conveyance to her, but de-
nies that they were paid for in whole or in part by her hus-
band, or with any funds belonging to him, or to which he was
entitled, or that he had any interest in them.

There was a reference to a commissioner in chancery to re-
port whether or not the judgments set out in the bill were
binding liens on the real estate therein described, and he re-
ports that they are not liable to the said judgments.    The
court decreed accordingly, and from that decree an appeal
was taken to this court in the name of Kinnier's adminis-
trator.

In *Yates* v. *Law*, 86 Va. 120, it is said "that the husband
is the owner of all the property, real and personal, of which
the wife may be in possession during coverture, especially if
they are living together as husband and wife; and to over-
come this presumption, in a contest between the husband's
creditors and the wife, she must show affirmatively that the
property is her own, and that it was derived from a source
other than her husband, and in good faith, if he be insolvent,
otherwise a wide door would be opened to fraud."

And in *Seitz* v. *Mitchell*, 94 U. S. 580, the rule is thus
stated: "Purchasers of either real or personal property made
by the wife of an insolvent debtor during coverture are justly
regarded with suspicion, unless it clearly appears that the con-
sideration was paid out of her separate estate.    Such is the
community of interest between husband and wife; such pur-
chases are so often made a cover for a debtor's property; are
so frequently resorted to for the purpose of withdrawing his
property from the reach of his creditors and preserving it for

his own use, and they hold forth such temptations for fraud, that they require close scrutiny. In a contest between the creditors of the husband and the wife there is and there should be, a presumption against her which she must overcome by affirmative proof.''

In *Yates* v. *Law, supra,* it appears that there was ''absolutely no proof that the lease in question was acquired with funds not furnished by the husband, or that the wife had any separate funds of her own whatever; nor is it even alleged in the answers that she had. The answers, indeed, do deny that the lease is the property of the husband, and aver that it is the separate property of his wife. But this is not enough. To repel the presumption that it was the husband's property, it was incumbent on the wife to distinctly aver, and to clearly prove, that it was purchased with her own separate means, or, at all events, that it was acquired by ''means other than her husband's. But here not even an attempt was made to prove that she ever had any separate estate, or that she ever had any opportunity for obtaining money except from her husband, or that she in any way *bona fide* acquired the lease as her separate estate.''

Fully conceding that the law is as stated in the cases cited, we are of opinion that the case before us is easily distinguishable from, and should not be controlled by, them. Pryor Woodson was insolvent at the time of the rendition of the judgments in controversy. He removed with his family to the city of Roanoke, and was employed there as a laborer, and for some years as the city scavenger, earning at no time, either as laborer or as scavenger, more than from $40 to $50 per month— a sum not sufficient for the support of himself and family. The judgments were rendered in 1880. This suit was instituted in 1889, and there is no suggestion, or any circumstance to excite the suspicion, that Pryor Woodson was other than a hopeless insolvent without means, and without employment with which to purchase in his own name, or that of another, property of any value whatsoever. The proof is, and the com-

missioner so reports, that Mrs. Woodson during that period conducted in her own name a small store. What the profits of this business were does not appear. It is proved also that she kept a boarding house, conducted in her own name at which she entertained as many as sixteen boarders. This avocation requires but a small capital to begin with, and there are few pursuits in which a woman can engage in which her activity, her industry, her energy, and all her personal resources can be more profitably employed. Therefore it is that whenever misfortune befalls a woman, and the duty devolves upon her of providing a support for herself, her family, and, it may be, for an unfortunate and an unthrifty husband, she turns to this occupation for the means of earning a living for herself and those dependent upon her. A very different case from that of *Yates* v. *Law, supra.* There is proof here that the property in question was acquired by funds not furnished by the husband. She does allege in her answer that it was acquired by the proceeds of her own labor. She does deny that it is the property of her husband. She does aver that it was purchased with the proceeds of her separate estate, and, if she has not clearly shown that it was purchased with her own separate means, she has shown that it was acquired by means "other than her husband's," and this latter alternative satisfies the conditions imposed upon her in *Yates* v *Law.*

The presumption against the wife established by *Yates* v. *Law* and *Seitz* v. *Mitchell,* and kindred cases, is one which may without doubt be rebutted by proof. The presumption is that the funds were furnished by the husband. but when it is shown that he could not have furnished them, and the proof is that she was engaged in a business from which resources might reasonably be expected with which to make the purchase, we are of opinion that that presumption has been successfully met and repelled.

There is no error in the decree complained of, and it is affirmed.

*Affirmed.*