## DeWitt Taylor Kennard, Appellee, v. Isabella Curran, Appellant.

### Gen. No. 14,004.

1. APPEALS AND ERRORS—*upon what assignment of errors cannot be predicated.* A party cannot assign error with respect to matters which concern other parties not complaining thereof.

2. CREDITORS' BILLS—*when decree subjecting property to judgment proper. Held,* that under the evidence, it was proper to decree that the property in question in this proceeding was the property of the judgment debtor and not of his wife.

3. HUSBAND AND WIFE—*scrutiny of transactions between, when rights of creditors involved.* As against creditors, transactions between husband and wife are viewed with suspicion, where there is evidence tending to show that the husband was merely using his wife's name to cover up his own transactions. In such case the burden is upon the wife in claiming title to real estate to establish her ownership by a preponderance of the evidence.

Creditor's bill. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed June 30, 1908.

**Statement by the Court.** The appellee herein obtained a money decree in the Circuit Court of Cook county entered August 2, 1905, against Richard Curran, husband of Isabella Curran, the appellant, for $16,720.63. Execution having been issued on the decree and returned on the twenty-fifth day of October, 1905, no part satisfied, appellee thereafter brought a creditor's bill against said principal defendant Richard Curran, his wife Isabella Curran and other parties defendant. The bill charges in substance that the codefendants had property in their names and under their control in which said Richard Curran had some equity of redemption or other interest. The answer of defendant Richard Curran denies that since August 2, 1905, at which time the money decree referred to was recovered against him, he has put out of his hands, name or possession, any real or personal property with intent to deceive, hinder, delay or defraud complainant and other creditors, and denies that any of the parties made defendants to the bill except as specifically stated have property in their names or control in which said defendant has any equity of redemption or other interest, and denies that said parties are indebted to him.

The answer of Isabella Curran, wife of Richard Curran, denies that fraudulent conveyances have been made to her, admits that she has title to certain of the property in controversy but denies that she has any property rights, title or interest belonging to her husband or is holding anything of value for his benefit which belongs to him except as to certain property specifically mentioned which she states she is informed is the property of Richard Curran.

The decree finds that certain property therein described stands in the name of Samuel R. Hurford, to secure a debt to said Hurford amounting to about $14,990.25, that the equity in all the property held by Hurford over and above said amount is in Richard Curran and subject to the payment of complainant's

debts.   The decree further finds that certain property
therein described, the title to which stands in Isabella
Curran, wife of Richard Curran, belongs to her hus-
band Richard Curran; who is the equitable owner
thereof, and that as to the same the complainant is
entitled to the relief sought.   The decree appoints a
special commissioner and provides that the equity of
Hurford in the property held by him over and above
the debt to him secured thereby be conveyed by quit
claim deed to said commissioner; that Isabella and
Richard Curran convey to the commissioner the prop-
erty found to belong to said Richard held in the name
of his said wife, the conveyance to be subject to the
dower right of Isabella and to mortgages which were
on record at the time of the filing of the bill of com-
plaint, and also subject to Richard Curran's right of
redemption from any sales of said property made by
the commissioner.   The decree directs that the com-
missioner sell at public vendue the property so con-
veyed to him and that out of the proceeds he pay all
costs of suit and master's fees, and out of the re-
mainder pay to the complainant in this suit the amount
due him, provided the remaining proceeds of the sale
shall be sufficient for that purpose.   If the proceeds
of the sale be more than sufficient, then the balance is
to be paid to defendants Richard and Isabella Curran,
and it is provided that any surplus of land over and
above what is necessary to pay complainant's debt
shall be reconveyed to said defendants by the commis-
sioner.   From this decree the wife, Isabella Curran,
prosecutes this appeal.

EDWARD MAHER and ROBERT F. KOLB, for appellant.

CHARLES B. STAFFORD, for appellee; E. R. THURMAN,
of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the
court.

It is said in behalf of appellant Isabella Curran that

the decree takes from said Isabella, wife of Richard
Curran, a large amount of valuable property not prop-
erly subject to the payment of her husband's debts.
The only question to be determined is whether the de-
cree is correct in finding that certain property therein
described, the title to which is in Isabella Curran, is
in fact the property of Richard Curran and subject
to the payment of his debts.

Counsel for appellant presents a number of conten-
tions in his brief which it is unnecessary to consider,
in view of the fact that no appeal has been taken from
the decree by any of the defendants except Isabella
Curran. Richard Curran, the principal defendant to
the bill, and the other co-defendants are making no
complaint of the decree against them, and the alleged
errors in procedure argued by appellant's counsel are
in no way shown to have been harmful to appellant.
As said in Culver v. Cougle, 165 Ill. 417-420, ''The
error, if one was committed, related to them and to
them alone. It did plaintiffs in error no harm and
they have no just ground of complaint.'' The decree
finds that Isabella Curran holds certain real estate in
her name of which her husband Richard Curran is the
equitable owner. The question which concerns appel-
lant is, whether this finding is warranted by the evi-
dence.

There is no room for question that a wife is at lib-
erty to employ her husband in the management of her
separate property without subjecting it to the payment
of his debts. If such was the nature of Richard Cur-
ran's connection with the management of the property
standing in appellant's name, which by the decree is
subjected to payment of her husband's debts, and the
property was in fact her own, the decree must be
deemed erroneous. There is, however, abundance of
evidence in the record tending to show that as to
such property Richard Curran was not acting as the
agent of his wife, but acting for himself in her name.
Appellant herself testified, when her attention was

called to the description of these specific properties, that she had no idea where they were located and had no knowledge of the names of persons from whom they were conveyed to her. She had no knowledge of what was paid for said property, whether it was paid for in cash or by other real property, does not remember as to money borrowed on any of it, when the titles were acquired, nor, as she testifies with reference to one part of the real estate in question, "how or what I paid for it, or from whom I got it, whether it was for cash or at a trade or part cash or part trade." Her explanation of the way in which she acquired the money which she testified was invested by her husband under her direction in the properties in controversy is that money and certain real estate were given to her by her husband in the early part of her married life, and that the proceeds "have been traded, sold and resold and the proceeds invested again and again." As to three pieces of property specifically mentioned in her testimony she cannot say whether or not they are standing in her name, and if they do so stand, whether they belong to her or to her husband.

It is, we think, apparent from the evidence that Richard Curran was acting in reference to the properties in question independently of his wife, that he did with them just what seemed to him best without any consultation with her and without her knowledge. It appears also that titles to properties acquired by him were taken in the names of other parties, and that some of these were subsequently deeded to appellant. Richard Curran kept on hand blank deeds signed by his wife, which he filled in and used as he saw fit. Cash received in these transactions went into his own bank account. He kept no books showing any interest of his wife in the property in controversy, and other than the fact that the titles stood in the wife's name there was no memorandum, nothing in his books or in his bank account which tended to show that she had any interest whatever in any of the

property in question so handled by him as his own. Appellant testifies that she never had a dollar or piece of property except what her husband gave her, and she does not know what has been the result of his trading with such property as she says he gave her. She admits that she has the title to certain real estate which she says she is informed he ownes and which she says she is willing to turn over to the receiver, but she has no knowledge of this or of other matters relating to the property in her name, as she states, except what she received from her husband. "He bought the lots, let the contracts, determined the amount of payments, paid the money, borrowed it when necessary, sometimes in his own name," apparently not only without her consent but without her knowledge. It is no doubt true that, as said in Alsdurf v. Williams, 196 Ill. 248, "If the property belongs to the wife it cannot be taken for the debts of the husband, and all the securities and legitimate outgrowth of the investment are as absolutely hers as the original capital," and that "A wife acting in good faith is not obliged to resort to strangers to transact her business, but may make her husband her agent without imperiling her property." In the case at bar, however, the evidence fails reasonably to account for the acquisition by the wife of property in controversy. Richard Curran testifies, "The property my wife has came from the sale of the house 6216 Kimbark avenue," and apparently this house represented all that Richard Curran claims to have given his wife up to the time of the transaction out of which arose the litigation which resulted in the decree in favor of the complainant in this case.

We deem it unnecessary and it would serve no good purpose to follow the evidence specifically as to each separate piece of property referred to in the decree. We have carefully examined the evidence and note what is said in appellant's brief as to the history of the several properties involved. It is claimed in be-

half of appellant that it does not appear by a preponderance of the evidence that appellant held title to these various pieces of property for the benefit of her husband, that there has been no trust shown, no conveyance to appellant for the use of her husband, and that it does not appear that Richard's money went into the property in controversy. Appellant's counsel, however, overlooks that as against creditors, transactions between husband and wife are viewed with suspicion where there is evidence tending to show that the husband was merely using the wife's name to cover up his own transactions. In such case the burden is upon the wife when claiming title to real estate to establish her ownership by a preponderance of the evidence. In Victor v. Swisky, 200 Ill. 257-260, the wife testified that she had loaned her money to her husband, that she never had a note, never asked for one, never received any interest, never asked him to repay the money, knew nothing about the conveyance in question, did not ask for it, did not know the amount of the property conveyed, its value or location, nor did she know how much, if anything, was to be credited upon her husband's indebtedness by reason of the conveyance referred to. The court said that the husband, "Although insolvent, had the legal right to prefer his wife if she was in fact a *bona fide* creditor, but the grantee being his wife, proof of the good faith of the transaction should be full and clear." The testimony in that case showed a state of facts much more favorable to the wife's claim than the evidence in the case at bar. It there appeared that the wife had received money from her father which she had delivered to the husband. In the case at bar, however, it is not claimed that the wife had any money or resources except such as she claims her husband gave her. The burden of proof rested upon appellant to show how she acquired the properties in question and that she was in good faith entitled to retain them as her own as against the creditors of the husband, there

being no controversy as to the fact that she received title to them from him. As said in Yates v. Law, 86 Va. 117, "In a contest between any creditors of the husband and wife there is and there should be a presumption against her which she must overcome by affirmative proof." There is evidence clearly tending to show that property of the husband was put in the wife's name to avoid the claims of complainant. The husband conducted some of his real estate transactions in the names of other parties besides his wife. It appears that these parties had no interest in the properties which without consideration they deeded to appellant. We are of opinion the evidence fails to satisfactorily support appellant's claim of ownership of the property in dispute by affirmative proof.

It is urged in behalf of appellant that to recover, complainant should have averred and proved that he was a creditor of Richard Curran at the time of the conveyance of the property in question, and that Richard was insolvent at that time, citing Bridgford v. Riddle, 55 Ill. 261-263. As to a portion of the property it appears the titles were put in appellant's name since the commencement of the suit which resulted in the money decree in favor of complainant upon which decree the creditor's bill now under consideration is based. If, however, as there is evidence tending to show, such conveyances to appellant were made not with any intention of conveying to her any more than the legal title while the real ownership remained and still remains in the husband, it is immaterial when such conveyances were made.

Finding no material error, the decree of the Circuit Court must be affirmed.

*Affirmed.*