88  963
99   31

## Richmond.

### SIMPSON v. DUGGER & ALS.

### BOISSEAU v. DUGGER & ALS.

March 31st, 1892.

1. PURCHASER—*Rents*—*Lis pendens*—*Case at bar.*—Vendee of property sold under decree in creditors' suit against D., had notice of a suit setting up D.'s children's claim thereto in the right of their deceased mother. Pending that suit, vendee sold the property to an insolvent;
HELD:
> The children being adjudged entitled to the property, are entitled also to recover the rents from the vendee.
2. IDEM—*Estoppel.*—The property having been deeded to such vendee, though knocked off to the insolvent, and in the children's suit the former having asserted his title as the actual purchaser;
HELD:
> He is estopped from denying he was such purchaser.
3. IDEM—*Cross-bill*—*Res adjudicata.*—Where one filed a bill attacking a trust deed, and it was adjudged invalid, he cannot afterwards be allowed to file a cross-bill setting up an interest in the subject-matter of said trust deed, which he might have, but did not set up in his original bill.

Appeal from decrees of circuit court of city of Danville, one rendered March 22nd, 1889, in the suit of the appellants, Lucy T. Simpson, who was Lucy T. Dugger, and Benjamin E. Dugger and others, and the other rendered the same day on the cross-bill filed in said suit by the appellant, P. H. Boisseau. Opinion states the case.

*Berkeley & Harrison* and *Christian & Christian*, for appellants in first case and for appellees in second case.

· *E. E. Bouldin* and *W. W. Henry*, for appellants in second case and for appellees in first case.

FAUNTLEROY, J., delivered the opinion of the court.

These cases are sequels of the case decided by this court December 1st, 1887, of *Dugger's Children* v. *Dugger and others,* and reported in 84 Va. (9 Hansbrough) 130. That suit was brought on behalf of the two infant children of the defendant, Daniel Dugger, to set up a resulting trust in a house and lot on Main street in the town of Danville, Virginia, and to vacate and set aside sundry deeds, and a deed of trust, by which the said Daniel Dugger claimed title to the said property in his own right, and had affected and encumbered it in favor of his creditors. This court decreed that the Dugger children, as heirs or devisees of their mother, Louisiana E. Dugger, deceased, whose separate estate the said property was, were entitled to the property in controversy; declared that their father, Daniel Dugger, took and held the legal title as their trustees and for their benefit; vacated and annulled all the deeds and encumbrances by which he had affected the property, and set aside and annulled a judicial sale which was made of the said property in March, 1881, in a creditor's suit by the creditors of Daniel Dugger, and ordered the property to be surrendered to them, the said Dugger children, and their title to be quieted. The property was surrendered, and the court below ordered an account to ascertain the rents and profits from the time of the sale in 1881 up to the surrender of the property under the mandate of this court, January 1st, 1888, as to both parcels of the land—that which had been bought at the commissioner's sale by the defendants, A. Y. Stokes & Co., and that which had been bought at the said sale by the defendant, P. H. Boisseau. The commissioner reported the amounts of the rents and profits which the Dugger children were entitled to have; and A. Y. Stokes & Co. paid the amount reported

to be due by them. The report stated the amount of rents and profits which were due for the part of the property "bought by P. H. Boisseau to be $3,392.67, and the amount that should come off as proper credits for taxes, &c., to be $575.46, and respectfully refers it to your honor (the court) to decide *whether P. H. Boisseau*, or *W. E. Boisseau*, trustee for M. L. Boisseau, is responsible to complainants." Neither W. E. Boisseau, trustee, nor M. L. Boisseau, his wife, and *cestui que trust*, was or is a party to the suit.

The circuit court of Danville, to which the cause had been transferred from the corporation court of Danville, entered the decree of March 22d, 1889, declaring "P. H. Boisseau is not responsible for any rents and profits; and so far as the commissioner reports the same against him, the said report is overruled and set aside," &c. From this exemption of P. H. Boisseau from all liability to them for the rents and profits of their property the Dugger children have taken this appeal.

The naked question presented for the consideration of this court is, can P. H. Boisseau purchase, at a judicial sale, property adjudged by the decree of this court to be the property of the Dugger infants, with full notice of their claim and of the pendency of a suit against him and others to vacate and annul all the proceedings under which they derived their fraudulent title—swearing and contending, in that suit, that he was the sole and rightful owner of the property by virtue of his purchase at the said sale, and when the sale is declared null and is set aside, and his purchase declared to be void, and all the deeds and trusts imposed upon the land of the Dugger infants adjudged to be fraudulent and void—can he then come in and disclaim ownership of the land, and escape all liability for the rents and profits by shifting the responsibility to his *insolvent* brother, to whom he has conveyed the property as a trustee for his insolvent brother's wife, and that, too, for full consideration paid to him by that brother and wife?

At the commissioner's sale, made in the suit of Daniel Dugger's creditors in March, 1881, W. E. Boisseau bid for the property, but represented that he was acting for his brother, P. H. Boisseau; and the deed by the commissioner actually was made to P. H. Boisseau. In the old suit, both in his answer and in his deposition, P. H. Boisseau swore and asserted that he was the *actual* and not the *nominal* purchaser of the property at the said sale. And in his deposition, given since this case went back from this court, in this present case, he testifies that he bought the property; but told W. E. Boisseau that if he or his wife would pay him the amount he had paid for it he would let them take it. This was only a private arrangement between P. H. Boisseau and Mr. and Mrs. W. E. Boisseau, for their own purposes, and never known to the appellants until disclosed in his deposition in this suit; and that arrangement could not affect his relation and responsibility to the rightful owners of the property.

He says that W. E. Boisseau and his wife, M. L. Boisseau, agreed to this arrangement, and under it W. E. Boisseau took charge of the property, and managed it for his wife until January 26th, 1883, when Mrs. Boisseau, or her trustee, W. E. Boisseau, finally settled with him for the property, by ".cash and notes;" and he then, January 26th, 1883, made a conveyance of the property to W. E. Boisseau, as trustee for his wife, Mrs. M. L. Boisseau, who, at the same time, made a deed of trust to B. Green, to secure him and other creditors. All this is disclosed, for the first time, by P. H. Boisseau, in his deposition given after this court reversed the case and remanded it for further proceedings.

Both in his answer and in his deposition in the old suit P. H. Boisseau, so far from stating or revealing any such arrangement or intimating that Mrs. M. L. Boisseau, or W. E. Boisseau, as her trustee, or individually, had, or claimed any interest in the property, positively and vehemently stated that

he, P. H. Boisseau, was the purchaser of the property, and claimed it under the deed from the commissioners, and resisted, both in the court below and in this court, in the most strenuous manner, the claim and effort of the appellants to recover it. W. E. Boisseau swears that P. H. Boisseau was the purchaser of the property, and that he, W. E. Boisseau, was not.

P. H. Boisseau was the apparent purchaser, and the deed was made to him. He sold it to W. E. Boisseau, and got full pay for it, and he is estopped, by his conduct and by his solemn sworn statements, to deny that he was the purchaser, whether he was or not. He now, for the first time, comes forward with his private arrangement with W. E. Boisseau, as trustee for Mrs. M. L. Boisseau (of which and of whom the appellants had no knowledge as having any relations to the property, and neither of whom, to this day, is party to any of the suits), and claims immunity from liability for the rents and profits of the land, which he bought and sold, and for which he received full value, on the ground that he *had* collected no rents, but had sold the property to another, who had collected and enjoyed the profits, and that other, his *insolvent* brother, who was not a party to the suit.

At the time of the sale when P. H. Boisseau purchased the property, he not only had *constructive* notice by virtue of their *lis pendens*, of the rights of the Dugger children; but *actual* notice was given at the commissioner's sale of their rights and their title; and, by taking a conveyance of the property with notice of the equity of the Dugger children, he became a trustee for them; and, instead of restoring the property to them, he denied and resisted to the end their claim to their own; and meantime, let W. E. Boisseau, as trustee for his wife, into the possession of the infants' property, and allowed him to continue such possession (he in the meanwhile holding the legal title) until 26th of January, 1883, and then actually conveyed the property, under an arrangement for his own benefit, whereby he received certain "cash

and notes " in full settlement and satisfaction for the property. P. H. Boisseau's *solvency* and W. E. Boisseau's *insolvency* afford the key or clue to the labyrinth of this juggle by which these infant appellants are doomed to drop their bucket into an empty well, and are given permission to sue W. E. Boisseau for the rents and profits of the land adjudged to be theirs by the decree of this court against the defendant to their suit, P. H. Boisseau, who, pending the suit against him to recover their land, makes a conveyance of the land to defeat the infant complainants' recovery of the entire rents and profits of the land. See *West* v. *Hughes*, 1 Har. & John. 574; *Wyllie* v. *Ellice*, 6 Hare, 505; *Lennox* v. *Lennox*, Humph. 225; *Drury* v. *Conner*, 1 Har. & Gill, 220; *Chaney* v. *Smallwood*, 1 Gill, 367.

Upon these authorities, and the most familiar principles of law and equity, P. H. Boisseau is liable to account for the rents and profits of the land of the appellants from the time he purchased it, until it was surrendered to the appellants under the decree of this court in the case of *Dugger's children* v. *Dugger and others ;* and the circuit court of Danville erred in its decree, exempting the said P. H. Bossieau from his said liability and accounting in the suit of *Simpson, &c.,* v. *Dugger et als.;* and the said decree is, in this particular, reversed and annulled.

The case of *Boisseau* v. *Dugger et als.,* argued and submitted along with the foregoing, is an appeal from the refusal of the circuit court of Danville in the same decree, to allow P. H. Boisseau to file a cross-bill in this suit, by which he sought to agitate and litigate, over again, matters which were forever concluded by the decree of this court on the former appeal. The main object of the original bill was to have the deed of trust of June 25th, 1879, from Daniel Dugger to P. H. Boisseau, trustee, declared null and void. P. H. Boisseau was a party defendant to that bill, both as trustee and in his own right. He was charged in the bill with notice of the rights and title of the complainants, the Dugger children, both at the

time the deed of trust was made and at the time he became a purchaser at the commissioner's sale in March, 1881. The bill charged, "Your orators charge that the said deed of trust was made to P. H. Boisseau, trustee, when he and William E. Boisseau knew fully and entirely that the said property did not belong to said Daniel Dugger, but to your orators; and both P. H. Boisseau and William E. Boisseau have always had full notice of your orators' title as aforesaid. The record of the suit of *Dugger's children* v. *Dugger et als.,* shows that the precise question and all the matters projected in this cross-bill were decided and concluded in the old suit, and, upon the pleadings and evidence in that record, the decree of this court declared the deed of trust to P. H. Boisseau, trustee, void, and ordered the title of Dugger children to the property to be quieted, and that decision binds all the parties before the court, and all claiming under the deed forever. Yet, now, comes P. H. Boisseau, who was a party defendant before the court in his own right and as trustee in and under the void and fraudulent deed of trust, who filed an answer and gave several depositions in the cause, who was represented by able counsel in the court below and in this court, and says that, though this court ordered the deed of trust to be cancelled for fraud, it should be held valid as to him, and the title of the Dugger children should be quieted as to the claims of W. E. Boisseau and not as against him. There would never be an end of litigation, and judicial proceedings are a farce, if a party, who is a defendant to a suit to set aside a deed of trust, can contest the case to the uttermost with every opportunity to present every claim or defence he can, and, after the Supreme Court of Appeals declares the deed of trust fraudulent and void and remands the case, he comes in by a cross-bill and says: "I had an interest in some of the notes secured by way of collateral, and I did not disclose that interest to the court, but I now claim that the said void and fraudulent deed of trust so declared by the final judgment of the ultimate court in the commonwealth, ought

to be equitably enforced for my benefit, to relieve me from the restitution of the rents and profits of the appellants' land and shift the liability over upon my irresponsible and insolvent brother and co-operator in the fraudulent transaction."

The circuit court did not err in refusing permission to file the cross-bill of the defendant, P. H. Boisseau, and it is in this particular affirmed.

DECREE IN FIRST CASE REVERSED.

DECREE IN SECOND CASE AFFIRMED.