# CHARLESTON.

MILLER *r.* COX, *et al.*

Submitted January 11, 1894.—Decided January 27, 1894.

<table>
<tr><td>38</td><td>747</td></tr>
<tr><td>41</td><td>260</td></tr>
<tr><td>41</td><td>392</td></tr>
<tr><td>38</td><td>747</td></tr>
<tr><td>42</td><td>635</td></tr>
<tr><td>38</td><td>747</td></tr>
<tr><td>45</td><td>633</td></tr>
<tr><td>38</td><td>747</td></tr>
<tr><td>47</td><td>694</td></tr>
<tr><td>47</td><td>697</td></tr>
<tr><td>47</td><td>698</td></tr>
<tr><td>38</td><td>747</td></tr>
<tr><td>56</td><td>347</td></tr>
<tr><td>38</td><td>747</td></tr>
<tr><td>63</td><td>259</td></tr>
</table>

1. TRUSTS AND TRUSTEES—FRAUDULENT CONVEYANCES –HUSBAND AND WIFE.

Where during the pendency of a suit against an insolvent husband, instituted for the purpose of obtaining a judgment on a note executed by him, said husband executes a deed of trust on his real estate to a trustee, to secure to his wife the payment of a sum of money which he claims she had loaned to him, which he had used in his business, and which sum was barred by the statute of limitations when said trust was executed, and amounted to nearly the value of the real estate, such trust-deed can not, as a lien, take precedence over judgments obtained by the *bona fide* creditors of said husband on debts created before said trust was executed, on the unsupported testimony of the husband and wife as to its validity.

2. HUSBAND AND WIFE—GIFT—LOAN—PRESUMPTION—EVIDENCE.

Where money belonging to the wife as her separate estate is delivered to her husband, and used by him in his business, the law presumes it was intended as a gift, and not as a loan; and, in order to constitute such delivery a loan as against the husband, the wife must prove an express promise of the husband to repay, or establish by the circumstances that it was a loan, and not a gift.

3. HUSBAND AND WIFE—GIFT—LOAN—PRESUMPTION—EVIDENCE.

Where the facts and circumstances tend to show that a gift was

intended, and that the husband used and dealt with the property as his own, the mere parol testimony of the husband and wife, of a private understanding between themselves that the transacaction was by them considered or intended as a loan to the husband by the wife, and not a gift, will not, as against the creditors of an insolvent husband, rebut the presumption of a gift.

4. COMMISSIONERS IN CHANCERY—NOTICE.

In taking an account the commissioner may take the depositions of witnesses to enable him to act upon the subject, under his general notice, and a special notice is not necessary.

5. TRUSTS AND TRUSTEES—STATUTE OF LIMITATIONS—HUSBAND— WIFE.

If, at the date of said deed of trust, the claim thereby sought to be secured is barred by the statute of limitations, that fact has a strong tendency to defeat said trust-deed as a lien in favor of the wife against *bona fide* creditors of her husband.ʼ

C. E. HOGG, for appellant cited Wood Lim. Act. 313, 314, 325; Id. 257; Code, c. 104, s. 6; 4 W. Va. 56; 23 W. Va. 651; 24 W. Va. 405, 408–410; 29 W. Va. 441; 1 Bart. Ch'y Pr. 163; Id. 226; 10 Leigh. 668; 1 Munf. 118; 3 Munf. 29; 1 Bart. Ch'y Pr. 222; Sto. Eq. Pl. § 224; 10 W. Va. 322; 4 W. Va. 56, 71; 23 W. Va. 65; Id. 197; 32 W. Va. 203; Id. 203; 5 G. & J. 432; 22 W. Va. 671; 23 W. Va. 479; 24 W. Va. 730; Id. 403; 11 W. Va. 102; Id. 169; 24 W. Va. 199; 13 W. Va. 29; 2 S. E. Rep. 780; 9 W. Va. 296; 14 W. Va. 211; 25 W. Va. 288; 1 Bart. Ch'y Pr. 346, 357, 358; 15 S. E. Rep. 997; 114 Ill. 304; 3 Chit. Pl. 1168.

WELLS & PENDLETON for appellee cited 20 W. Va. 351; 15 S. E. Rep. 997; Mit. Eq. Pl. 14; 24 W. Va. 32; Sto. Eq. Pl. § 92; 11 W. Va. 169, 173, 174; 16 W. Va. 109; 24 W. Va. 541; 25 W. Va. 417; 27 W. Va. 220; 26 W. Va. 569; Id. 736; 27 W. Va. 394; Id. 635; 31 W. Va. 418; Code, c. 129, s. 7.

W. A. PARSONS for appellee cited Code, c. 74, s. 1; 84 Am. Dec. 573; 1 Pars. Cont. 434; 3 Am. & Eng. Enc'y L. 840 & n. 5; 7 W. Va. 474; 16 W. Va. 108; Id. 685; 12 W. Va. 402; 13 Pet. 359.

ENGLISH, JUDGE:

On the 28th day of November, 1888, J. S. Cox a resident

of Roane county, West Virginia, executed his note for one hundred dollars payable to Charles E. Hogg, six months after date for value received at the Merchant's National Bank, of West Virginia, at Point Pleasant, which note was endorsed by said Chas. E. Hogg and delivered to W. H. T. Spencer and was also endorsed by W. H. T. Spencer and delivered to Rankin Wiley, Jr., and by Rankin Wiley, Jr., was endorsed and delivered to C. C. Miller.

On the 3d day of September, 1889, said C. C. Miller obtained a judgment in the Circuit Court of Mason county upon said note against said J. S. Cox, Chas. E. Hogg and W. H. T. Spencer for one hundred and one dollars and sixty cents and costs.

At the time said note was executed said J. S. Cox was the owner of a tract of land situated on Reedy creek, in Roane county, West Virginia, containing one hundred and· twenty five acres, and on the 19th day of August, 1889, said J. S. Cox conveyed said tract of land to one George C. Brown as trustee, to secure to his wife Margaret J. Cox the payment of a note for the sum of one thousand dollars payable one year after date which deed of trust was recorded on the 19th day of August, 1889, about fourteen days before said judgment was obtained upon said note.

At the February Rules for the Circuit Court of Roane county, said C. C. Miller filed his bill in equity against said James S. Cox, George C. Brown, trustee, and Margaret J. Cox, praying that said deed of trust might be declared voluntary and void, alleging that it was made with intent to hinder, delay and defraud the creditors of said defendant James S. Cox; and because the same was without any consideration whatever deemed valuable in law, that the same might be set aside and that the said tract of land might be sold to satisfy said judgment and costs, *etc.*

The defendant Margaret J. Cox demurred to the plaintiff's bill which demurrer was sustained, the bill was amended at bar and thereupon said Margaret J. Cox filed her answer. Subsequent to the amendment of said bill no demurrer seems to have been interposed, by the defendants or either of them. It is however contended by counsel for the appellees that Charles E. Hogg and W. H. T. Spencer

against whom the judgment was obtained jointly with J. S. Cox were necessary parties to the suit. This question was however, fairly presented in the case of *Howard* v. *Stephenson*, 33 W. Va. 116, and it was in that case held that where a judgment had been obtained against R. & S. and a chancery suit was brought to enforce the lien of said judgment against the lands of S. it was unnecessary to make R. a defendant in said chancery suit as in it the plaintiff sought no redress against him or his property." GREEN, J., in delivering the opinion of the Court says: "It is also claimed, that the necessary parties defendant to this suit were never made parties defendant. First, it is claimed as the exhibits filed with the bill show that the judgments which the plaintiff seeks to enforce were judgments not against the defendants only but also against others, these others were necessary parties to this suit. The question as stated by Barton in his Chancery Practice 133–138 is, "No one should be made a defendant against whom there can be no decree or relief granted in the suit" and Sands in his suit in equity, 191, and this Court in *Hill* v. *Proctor*, 10 W. Va. 60, lay down the rule as follows: "All persons materially interested in the subject of the controversy ought to be made parties in equity," see page 78. But as Sands says on page 191, "This rule however is restricted to those who are interested in the property which is involved in the issue, and does not extend to persons who have an interest in the point or question litigated." As in this suit the only decree asked for, or which could have been rendered was a decision against the land of Stephenson, the defendant and appellant to pay this plaintiff's two judgments. No decree was entered or could have been obtained in this suit against any of the other defendants in these judgments in favor of the plaintiff in the chancery suit; and it was therefore unnecessary to make any of them defendants," and this ruling was followed and approved in the recent case decided by this Court in *The State of West Virginia* v. *Alderson Bowen et als.*, which has not yet been reported, and we see no cause for departing from said ruling in this case.

The questions raised by the first and second assignment of errors raise the question as to the correctness of the

ruling of the Circuit Court in holding the deed of trust given by James S. Cox to George C. Brown trustee, dated on the 19th day of August, 1889, to secure Margaret J. Cox his wife the payment of one thousand dollars, a valid lien and giving it priority over the judgment lien of C. C. Miller for one hundred and one dollars and sixty cents and these assignments of error may be considered together. In determining the *bona fides* of this transaction and determining whether said deed of trust was executed with intent to hinder, delay and defraud the appellant, we are allowed to look at the circumstances which appear in the record. So far as appears therefrom this tract of land which the defendant J. S. Cox testifies was worth about twelve hundred dollars, was all of the property real or personal possessed by the defendant J. S. Cox, an execution sued out upon the appellants judgment had been returned by the sheriff "no property found." At the time the deed of trust was executed by said Cox to secure his wife the payment of one thousand dollars, suit was pending in the name of said C. C. Miller against him which resulted in the judgment sought to be enforced in this case, about fourteen days after said deed of trust was recorded. A judgment had been rendered against him on the 22nd day of March 1889, for fifty dollars and costs amounting to eight dollars in favor of W. A. Parsons, and another judgment if favor of Wm. H. Wolf, cashier, was rendered against him in the Circuit Court of Jackson county on the 13th day of November, 1889, for the sum of one hundred and two dollars and eighty seven cents and costs amounting to eleven dollars and one cent, all of which debts existed at the date of said trust deed. The fact that the notes executed by said J. S. Cox to C. E. Hogg were causing trouble and apprehension in the mind of said Cox is apparent from the fact that said Cox told C. P. Adams that the note held by him would have to be paid and that he was making arrangements to sell two horses to pay the Hogg notes, that he would pay them as soon as he could and that if he had to have the money when it became due, requested him to be as lenient with him as possible, that he did not obtain judgment enough against Ball, that he had expected that to pay Hogg—and E. M. Riddle in his testimony,

when asked what, if anything he heard said Cox say about the payment of the Hogg notes, and what his intentions were with reference to the payment of them— (this deposition was taken the 10th day of July, 1891) answered, "As to dates I don't remember but it's been a year probably, in company with Mr. Cox he asked me if I knew he had made an assignment, and I told him I had not heard it. He said it was reported he had made an assignment, but that he had not, but by way of a deed of trust to his wife to secure her in some money that he had used of hers. He first stated that he did not do this to defraud any of his creditors out of his honest debts, but that he had executed two notes to C. E. Hogg for attorney fees that he considered unjust and that he did not think he had any right to, and would not pay them, that there were other agreements between him and Hogg, that Hogg had not complied with."

The plain and unmistakable inference to be drawn from this conversation with E. M. Riddle is that said Cox did not regard the debt evidenced by the notes executed to C. E. Hogg as a just debt and that he had executed the deed of trust for the purpose of avoiding the payment of the same, "he did not think he had any right to and would not pay them" he did not wish to defraud any of his creditors out of his honest debts, but he had given the deed of trust and he did not intend to pay these unjust notes, and while it is true that in his deposition said Cox denies that the said note and trust were executed for the purpose or with the intention of hindering, delaying or defrauding the plaintiff or any of his other creditors or any other person, yet he does not deny the conversation detailed in the deposition of said E. M. Riddle as above set forth. In this conversation with the witness Riddle he indicates the motive which induced the execution of the trust-deed; and while it is true that the declarations of the grantor made subsequent to the conveyance are not admissible to affect the title of the grantee (see *Casto* v. *Fry*, 33 W. Va. 449) yet in cases of this character they may be considered as a circumstance to show the motive which actuated the grantor in making a voluntary conveyance. She says in her deposition, he would repay to me amounts, he would

borrow it back again after awhile, the last money he borrowed was about 1882 and was something over one thousand dollars, some of which he used in buying cattle and horses and some in law suits.

Seven years had elapsed since the last money was loaned to her husband according to her own statement, and he had used the same in his business transactions, but when suit has been instituted against him upon a claim which he regards as unjust, and judgment is about to be obtained against him, he seeks to shelter his property from the impending judgment which he regards as unjust, and which he tells Mr. Riddle he will not pay, by executing a note to his wife for money she had given him to use in his business more than seven years before and executes a deed of trust on his land to secure the same. In answer to the question why after waiting so long, it occurred to said J. S. Cox that it was his duty to execute this deed of trust for the benefit of his wife, the conversation detailed by Mr. Riddle with said Cox, clearly indicates the motive and supplies the answer. In the case of *Zinn* v. *Law*, 32 W. Va. 447, this Court held first that "where a wife delivers money or property of her own to her husband, which he uses in his business, the presumption is that such delivery was intended as a gift, and in order to constitute such delivery a loan as against the creditors of the husband, the wife must prove an express promise of the husband to repay or establish by the circumstances than it was a loan and not a gift."

Second, "When the facts and circumstances tend to show that a gift was intended, and that the husband used and dealt with the property as his own, the mere parol testimony of the husband and wife of a private understanding between themselves, that the transaction was by them considered or intended as a loan to the husband by the wife and not a gift will not as against the creditors of an insolvent husband rebut the presumption of a gift," and this ruling as I think propounds correctly the law upon the facts stated. In the cases of *Crawford et al.* v. *Carper et al.*, 4 W. Va. p. 56, a father-in-law appears to have advanced to his son-in-law at different times a considerable amount of

money, the son-in-law afterwards becoming insolvent exe-
cuted his note to his father-in-law for the amounts so ad-
vanced, and immediately confessed judgment in favor of
his father-in-law for the amount of said note, with the
manifest intent of giving his father-in-law the first lien on
his land, the debt for which said note was executed and
judgment confessed was barred by the statute of limita-
tions, and Brown, P., in delivering the opinion of the
court said "while it was all very right if the debt was just
and real that it should be acknowledged and paid by the
debtor as between the parties, yet still, the important ques-
tion remains, whether under the circumstances of the case,
it could be so done as above stated, so as to intercept the
other *bona fide* creditors whose debts were not so barred.
And I am free to say I think it could not, because it comes
clearly within the first section of chapter 118, Code of 1860
and is just such a case as it was the intention of the statute
to prohibit." (This section corresponds precisely with sec-
tion 1 of chapter 74 of our Code) and the ruling in the case
of *Crawford etc.* v. *Carper etc., supra,* was approved and
reaffirmed in the case of *Knight* v. *Capito,* 23 W. Va. 651.
So also in the case of *Bank v. Atkinson,* 32 W. Va. 203, in
which it appeared that the wife allowed the proceeds of her
real estate to go into the hands of her husband, which mon-
ey was used by him in his business, and after several years
the husband purchased real estate in the name of his wife
which purchase he claimed was made with the proceeds.
It was held that "If when such purchase is made any claim
which she may have on him for such proceeds of her real
estate is barred by limitation, that circumstance tends
strongly to repel the wife's claim to exempt the land
against creditors, and in the same case it was held that the
law will not from the mere delivering by the wife of her
money to the husband or from the permitted receipt by
him of her separate estate imply a promise by him to re-
pay her, but will require more—either an express promise
or circumstance to prove that in such matters they dealt
with each other as debtor and creditor.

To thus raise a debt against him to the prejudice of cred-
itors, the proof must be clear, full and above suspicion.

Both J. S. Cox and his wife state that the last money he borrowed from her was in 1882, which must have been about seven years before the note for one thousand dollars was executed, which was secured by said deed of trust, they both state that a memorandum book was kept in her drawer by said Margaret J. Cox on which the amounts she loaned him, and the amounts he repaid her were set down, but that this memorandum book had been lost about two years before said note was executed, and that for that reason they could not ascertain the exact amount, and she agreed to take the note for one thousand dollars secured by said trust-deed. The cause was referred to a commissioner who was directed to ascertain the liens existing against said land, their nature and priority and in whose favor they existed, who ascertained and reported said trust-debt of one thousand dollars to be the second lien upon said land, if the court should hold that said trust-deed was valid, a judgment in favor of W. A. Parsons for fifty dollars with interest and costs, the first lien, the judgment of plaintiff for one hundred and one dollars and sixty cents with interest and costs, the third lien upon said land, and the judgment of Wm. II. Wolfe, cashier, for one hundred and two dollars and eighty seven cents with interest and costs, the fourth lien binding upon said land. The court in acting upon said report excluded the depositions which had been taken before the commissioner by the plaintiffs because no special notice had been given by the plaintiff of the time and place of taking the same, decreed that said trust-deed was a valid and binding lien upon said land, confirmed the report of the commissioner as to the order and priority of said liens and directed a sale of said land to satisfy the same in accordance with the priority so ascertained; and from this decree this appeal was taken.

It is assigned as error that the court sustained the exception to the plaintiff's depositions for the reasons above stated, which point I regard as well taken, as it has for years been the practice in Virginia and in this state to take depositions before a commissioner in reference to a matter referred to him without giving any notice other than the general notice of the time and place of taking the account.

Sands in his Suit in Equity p. 627, § 536, says: "Under the general notice given by the master commissioner when the order or decree is placed in his hands, the master or commissioner may take the depositions of witnesses without giving special notice to the parties of their being taken, see also the case of *McCandlish, Adm'r &c* v. *Edloe et als*, 3 Gratt. 330, where it is held 3d point of syllabus that in taking an account the commissioner may take the depositions of witnesses to enable him to act upon the subject under his general notice, and a special notice is not necessary." See also Barton's Chancery Practice vol. 2. p. 641.

Returning again to the question as to the validity of the trust-deed executed by said J. S. Cox to secure his wife the note for one thousand dollars we call attention to the case of *Maxwell* v. *Hanshaw*, 24 W. Va. 405, where this Court held that "A transfer of property either directly or indirectly by an insolvent husband to his wife during coverture is justly regarded with suspicion, and unless it clearly appears that it was entirely free from any wrong intent or purpose to withdraw the property from the husband's creditors it will not be sustained.

"In such transfers there is a presumption against the wife in favor of the husband's creditors which she must overcome by affirmative proof."

In the case under consideration the circumstances which lead us to the conclusion that said deed of trust was executed with intent to hinder, delay and defraud the creditors of said J. S. Cox may be summed up as follows:

First. The intimate relation of husband and wife existed between the grantor and the *cestui que trust*.

Second. The claim was barred by the statute of limitations at the time said note and deed of trust were executed.

In support of this proposition see Well's Separate Property of Married Women, § 662, where it is said, "If the husband receives moneys of his wife under an agreement to refund them, it seems in New York that the statute runs at the time of the agreement in the absence of any specified time of repayment—citing 3 Hun. New York Supreme Court 350, where the same is clearly held, and our statute expressly provides, section 15, c. 66, Code, that a married

woman may sue without joining her husband, where the action is between herself and husband, and where it concerns her separate property. As to this she is under no disability and the statute of limitations does not apply. See sec. 16, c. 104, which expressly excepts suits in regard to her separate estate.

Third. The declaration of said grantor to E. M. Riddle that he had not executed said trust to defraud any of his creditors out of his honest debts, but that he had executed two notes to C. E. Hogg for attorneys fees that he considered unjust and that he did not think he had any right to and would not pay them, that there were other agreements between him and Hogg that Hogg had not complied with."

Fourth. The deed of trust was executed during the pendency of the suit on one of said notes he had executed to said Hogg and said trust was recorded only fourteen days before the judgment was obtained.

Fifth. Although said J. S. Cox and his wife both state that an account was kept between them of the amount loaned to her husband, and returned to her by him at different times, said memorandum book was not produced.

Sixth. Said money was used by the husband in trading in stock and in law suits and the law would presume a gift instead of a loan.

Applying to these facts and circumstances the legal principles announced in the authorities above cited my conclusion is that while said deed of trust must be regarded as good enough between the parties thereto, it can not be allowed to take precedence over the claim of the plaintiff or the other *bona fide* creditors of said J. S. Cox and must be held void as to the judgment of the plaintiff C. C. Miller, the decree complained of must be reversed and the cause remanded, with costs to the appellant.