# Richmond.

## S. V. HARRIS AND W. T. HARRIS v. M. M. CARVER.

### September 25, 1924.

1. HUSBAND AND WIFE—*Presumptions and Burden of Proof—Presumption that Husband Owns Property in Possession of Wife—Married Woman's Act—Fraudulent and Voluntary Conveyances.*—The presumption of law is—and this presumption is not affected by the married woman's act—that the husband is owner of all property, real and personal, of which the wife may be in possession during coverture, especially if they are living together as husband and wife; and to overcome this presumption, in a contest between the husband's creditors and the wife, she must show affirmatively that the property is her own, and that it was *derived* from a source other than her husband, and in good faith, if he be insolvent, otherwise a wide door would be opened to fraud.

2. HUSBAND AND WIFE—*Separate Property of Married Women—Wife's Earnings—Presumption that Husband Owns Property in Possession of Wife.*—Code of 1919, section 5134, which provides that a married woman shall have the right to acquire, hold, use, control, and dispose of property, as if she were unmarried, and may contract and be contracted with, sue and be sued, in the same manner and with the same consequences as if she were unmarried, does not change the presumption that the husband is the owner of all property of which the wife may be in possession during coverture, but the sources from which a wife may accumulate a separate estate are enlarged by it. Thus, while at common law the husband was absolutely entitled to the wife's earnings unless she was a sole trader, under the statute in question the wife may accumulate a separate estate through her earnings.

3. SEPARATE ESTATE OF MARRIED WOMEN—*Estate Accumulated by Wife Through her Own Earnings—Presumption that Husband is Owner of Property in Possession of his Wife—Case at Bar.*—In the instant case the husband and wife sold their farm. The wife rented the farm from the purchaser, and with the aid of her sons and some aid from her husband accumulated sufficient funds to repurchase the farm, which was deeded to her.

   *Held:* That these facts were sufficient as against the husband's credit-

ors to overcome the presumption that the farm was the property of the husband.

4. ACTIONS—*Pleadings—Case not Made by Pleadings.*—In the instant case, a suit to subject a farm claimed to be owned by a wife to the debts of the husband, the wife had paid for the farm from her own earnings and those of her children, it might have been argued that the husband paid part of the purchase price of the farm as he was entitled to the labor of the children.

*Held:* That as no such case was made by the pleadings, it could not be considered.

Appeal from a decree of the Circuit Court of Mecklenburg county. Decree for complainant. Defendants appeal.

*Reversed.*

The opinion states the case.

*William P. Bivens,* for the appellants.

*Hiram Wall* and *Irby Turnbull,* for the appellee.

HOLT, J., delivered the opinion of the court.

On October 5, 1914, W. T. Harris and S. V. Harris, his wife, conveyed to R. E. Yancey, his home, consisting of about sixty-five acres of land in Mecklenburg county. This deed was admitted to record on the day following. It is with general warranty; payment of the consideration of $1,800.00 is acknowledged. As a matter of fact payment was not made in cash, but Yancey paid, with the consent of W. T. Harris, Harris' debts aggregating that sum. There is no suggestion of inadequacy of consideration. The transaction amounts to this. Harris, who was insolvent, sold his farm to Yancey, and applied the proceeds therefrom on his indebtedness. This transaction was legitimate in all re-

spects. That it amounted to a preference among creditors is immaterial here. *Surratt* v. *Eskridge*, 131 Va. 327, 108 S. E. 677.

When this sale was made Harris and his wife were both present. Mrs. Harris, at that time, rented the farm from Yancey, at an annual rental of $200.00, and Yancey told her that she should have the refusal of it should he conclude to sell. Mrs. Harris paid this rent from time to time, and on November 23, 1917, Yancey and wife executed and acknowledged a deed with special warranty conveying this farm to her. This deed was not admitted to record until January 19, 1920. The reason, therefore, was this—it had been the purpose of the parties to execute a trust deed for the unpaid balance of purchase money. This they did not do. Yancey retained the deed until he had been paid in full when it was delivered up and recorded. Mr. Harris, we have seen, was insolvent, and Mrs. Harris had nothing with which to pay this purchase money save what she could raise from the farm, and, but for the temporary prosperity which she, in common with all tobacco growers, enjoyed for a time probably would not have paid at all. The evidence shows that she did pay the entire purchase price, $2,000.00, and that she paid this with tobacco raised by herself and sons on this farm. Mr. Harris paid nothing thereon. It does appear that his wife turned over to him a small tract for cultivation, and that he used all that he made thereon in paying actual family expenses. It is also true that possession of this farm never went out of the Harris family.

At the December term, 1914, of the Circuit Court of Mecklenburg county, plaintiff recovered the judgment set up in his bill and brought this suit thereon in June, 1921. He had taken no evidence and relies wholly

upon presumptions of law.    The law on this subject has
long been settled.

[1] "Hence the presumption of the law is—and this
presumption is not affected by the married woman's
act—that the husband is owner of all property, real and
personal, of which the wife may be in possession during
coverture, especially if they are living together as hus-
band and wife; and to overcome this presumption, in a
contest between the husband's creditors and the wife,
she must show affirmatively that the property is her
own, and that it was derived from a source other than
her husband, and in good faith, if he be insolvent, other-
wise a wide door would be opened to fraud."    *Yates* v.
*Law*, 86 Va. 117, 9 S. E. 508.

It is so held in *Johnson* v. *Ables*, 119 Va. p. 593, 89
S. E. 908, relied upon by the plaintiff below.    To cite
additional authorities for this settled rule would be a
work of supererogation.

[2] What estate may a wife acquire?    *Grant* v. *Sut-
ton*, 90 Va. p. 771, 19 S. E. 784, was a case in which
Mrs. Grant claims:

"That during her married life, a period of about
twenty-five years, she had been frugal, industrious and
saving; and that she had managed for some years past
to save a sufficiency from her extraordinary exertions
to help her husband, who some years ago met with
great financial reverses, and to pay for her home, which
is sought to be subjected to sale in this suit."

The court in answering that claim in part said:

"That under the original married woman's act of
1877, the sources whence a separate estate of a married
woman, not a sole trader, could be derived were these
only, viz.: 'Gift, grant, purchase, inheritance, devise or
bequest;' and that it was not until the enactment of
the present Code, which took effect on the 1st day of

May, 1888, after the date of the transactions in question, that to the sources above mentioned were added the words 'or in any other manner whatever;' so that the present case, in particular, is governed by the rule of the common law which entitles the husband absolutely to the wife's earnings; for there is no averment in the answer that the appellant was a sole trader.''

The provisions of the Code of 1887 were repealed and superseded by an act approved March 7, 1900, session Acts 1899-1900, page 1240, which act was carried into the Code of 1919 (see section 5134) where it is provided that "a married woman shall have the right to acquire, hold, use, control, and dispose of property, as if she were unmarried," subject to certain exceptions irrelevant here, and this act then goes on to provide "a married woman may contract and be contracted with, sue and be sued in the same manner and with the same consequences as if she were unmarried."

The presumptions are not changed but the sources from which a wife may accumulate a separate estate are enlarged.

[3] These presumptions of law are met by positive testimony. Mrs. Harris had the right to purchase the property. She did purchase it and she herself paid for it, unaided by her husband. It is true that the deed to Yancey is one of general, and the deed from him to Mrs. Harris is of special, warranty, but the evidence showing Yancey to be purchaser in good faith and for full value is clear. So it is of little moment whether this deed was with general or special warranty. A quit claim one would have done as well and, indeed, he might have given this farm to Mrs. Harris. In each case, her title would have been good. All of this is shown by clear and convincing evidence and so pass the presumptions.

We do not wish to be understood as holding that this husband did no work on the place.   For him to have lived there and done absolutely nothing would have been almost an impossibility unless he was bed-ridden.

What we do hold is that it is entirely clear that this farm was purchased by Yancey and that he was a purchaser in good faith and for ample consideration; that he afterwards sold it to Mrs. Harris for a sum which did not differ materially from the amount he paid; that she did not pay for it with money furnished by her husband, he had none, but that she took charge of it and paid for it with the proceeds of crops which she herself raised.   He made no direct contribution thereto and his indirect contribution was negligible.

[4] It might have been argued on behalf of plaintiff that the crops used to pay for this place were raised in part by the children of Mr. and Mrs. Harris, and that since Mr. Harris was entitled to the service of the minor children, he did in fact pay in part for the place—that it was paid with labor that belonged to him.   *Penn., etc.* v. *Whitehead, et als.,* 17 Gratt. (58 Va.), p. 503, 94 Am. Dec. 478.   No such case is made by the pleadings and we cannot consider it.   *Alsop* v. *Catlett,* 97 Va. 364, 34 S. E. 48.   As a matter of fact, the age of these children is nowhere shown.

The decree complained of must be reversed, and a final decree will be entered here dismissing the bill.

*Reversed.*