# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## FANNIE A. DAVIS, WIFE OF C. T. DAVIS, v. SOUTHERN DISTRIBUTING COMPANY, A CORPORATION, AND OTHERS.

### September 29, 1927.

1. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Transactions Between Husband and Wife—Closely Scrutinized.*—It is well settled that transactions between husband and wife must be closely scrutinized to see that they are fair and honest and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors.

2. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Conveyance by Husband to Wife—Burden of Proof on Wife to Show Bona Fides—Presumption in Favor of Creditors.*—In a contest between the creditors of an insolvent husband and the wife, the burden of proof is upon her to show by clear and satisfactory evidence the *bona fides* of the transaction. In all such cases, the presumptions are in favor of the creditors, and not in favor of the title of the wife.

3. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Transactions Between Husband and Wife—Recognition of Relationship of Debtor and Creditor—Contemporaneous Promise on Part of Husband to Pay Debt.*—The mere holding of a bond is not sufficient evidence that at the time the bond purports to have been given it was recognized as a debt, and that both husband and wife intended to occupy the relation to each other of debtor and creditor. The burden is upon the wife to show that the original transaction represented a loan by her to the husband, and a contemporaneous promise on his part to pay the debt; otherwise, what was originally a gift to aid the husband in business, and used by him as a basis of credit, could subsequently, when he became involved, be converted into a debt to his wife, and thus perpetrate a fraud upon his creditors with the utmost facility and impunity.

4. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Conveyance from Husband to Wife—Evidence Held not to Establish that Conveyance was in Consideration of Debt of Husband to Wife.*—In the instant case, a suit by creditors to have a deed from husband to wife declared fraudulent and void, it appeared from the evidence that at the time of the con-

veyance the husband was indebted to sundry persons, and that the husband and wife with their family were living in a home together. It was claimed that the conveyance was for a consideration made up of sundry items advanced by the wife and evidenced by cancelled checks, some to the husband direct, others to creditors. Some of these checks had notations showing that they were given in payment of the husband's account, others were made payable to the husband without notations. It did not appear that at the time the checks were drawn by the wife and paid for the husband's indebtedness or to him direct, that there was an agreement between the parties that the transactions should constitute loans with a contemporaneous promise to pay back the amount borrowed.

*Held:* That the decree of the chancellor declaring the deed fraudulent and void should be sustained on appeal.

5. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Conveyance by Husband to Wife—Recognition by Husband of Advances by Wife as Debts and Promise to Pay—Sums Advanced by Wife Presumed to be Gifts—Case at Bar.*—In the instant case, a suit by creditors to have a deed from husband to wife declared fraudulent and void, it appeared from the evidence of the wife that she gave her husband checks and paid numerous debts due by her husband to third parties, but the record failed to show a single instance where the husband ever recognized any of the payments made to him or for him, as debts due his wife and made any contemporaneous promise to pay the same.

*Held:* That under such circumstances the law presumes the funds delivered to the husband by his wife to be gifts and not loans.

6. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Husband and Wife—Presumptions and Burden of Proof—Effect of Section 6210 of the Code of 1919.*—The doctrine in Virginia which places the burden upon those attempting to support a conveyance from a husband to the wife as against existing creditors of the husband is well settled, and while the Code of 1919, section 6210, has made the testimony of either consort competent in controversies of this character, it has in no sense changed the burden or shifted the recognized presumptions in such cases.

7. TRUSTS AND TRUSTEES—*Resulting Trust—Definition.*—Where land is purchased and paid for by one person while the conveyance is made to another the law implies a trust for the benefit of the former.

8. TRUSTS AND TRUSTEES—*Resulting Trust—Proof—Parol Evidence.*—A resulting trust arising from the purchase and payment by one and conveyance to another may be proved by parol evidence, but it must be clear and convincing.

9. FRAUDULENT AND VOLUNTARY CONVEYANCES—*Husband and Wife—Conflicting Defenses—Defense that Deed was given in Consideration of a Debt Due Wife from Husband—Defense that Wife had a Resulting Trust*

*in the Land and the Deed was a Conveyance in Furtherance of the Trust.*— In the instant case, an action by judgment creditors to have a deed from husband to wife set aside as fraudulent and void, to a judgment in favor of the creditors, it was assigned as error that the court failed to hold that a deed of the land in question from an aunt of the husband to her nephew created a resulting trust in favor of the wife, and that therefore the deed from the husband to the wife attacked as fraudulent was a conveyance in furtherance of the trust. The idea of a resulting trust seems not to have been suggested in the pleadings and was in irreconcilable conflict with the position taken in the answer, as well as in the first assignment of error, that the deed attacked was in consideration of a debt due from the wife to the husband.

*Held:* That there was no merit in this assignment of error.

Appeal from a decree of the Circuit Court of Lunenburg county. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*W. Moncure Gravatt,* for the appellant.

*W. E. Nelson, Thos. W. Ozlin* and *N. S. Turnbull, Jr.,* for the appellees.

McLEMORE, J., delivered the opinion of the court.

Appeal from a final decree of the Circuit Court of Lunenburg county.

This suit is the result of a certain deed executed by C. T. Davis, the husband of Fannie A. Davis, the wife, on December 8, 1921, in which he conveyed a tract of land containing seventy-two acres in Lunenburg county in consideration of $1,000.00. At the time of this conveyance and for some considerable time prior thereto, he was indebted to certain of the complainants in the court below (who will be referred to as they were in

that court), some of whom had been requesting payment before the deed of December 8, 1921, was drawn and executed.

As soon after this deed was placed on record as was practicable, complainants reduced their debts to judgments and at the first June rules, 1922, filed their bill to have declared fraudulent and void the deed from C. T. Davis to his wife, and to subject the land to the payment of complainants' debts. Depositions were taken and on December 11, 1925, a decree in accordance with the prayer of the bill declaring the deed of December 8, 1921, void and of no effect as to complainants, and directing certain enquiries to be made by a commissioner prior to a sale of the property.

Appellants base their defence upon two grounds, assigned as error:

"First, because the deed is not fraudulent and voluntary, but is based upon a good, valid and subsisting consideration in law—namely, debts due petitioner by her husband, C. T. Davis, which he promised to pay at the time same were contracted and which he owed her at the time the deed was made, which money loaned him by petitioner was the separate estate of Fannie A. Davis, and petitioner alleges that the court erred in declaring the deed void and liable to the judgments of complainants.

"Second, the court erred because it did not hold that the deed to C. T. Davis from his aunt was a resulting trust in favor of Fannie A. Davis, and that, therefore, when the deed from C. T. Davis to Fannie A. Davis was made, it was but the furtherance of said trust."

The legal principles involved in the first assignment have been so often the subject of judicial consideration that a reference to only a few of the more recent expressions of the courts would seem ample.

In *Sledge* v. *Reed*, 112 Va. 202, 70 S. E. 523, Judge Harrison, in a case strikingly like the one under consideration, says:

[1-3] "It is well settled that transactions between husband and wife must be closely scrutinized to see that they are fair and honest and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors, and that in a contest between the creditors of a husband and the wife, the burden of proof is upon her to show by clear and satisfactory evidence the *bona fides* of the transaction. In all such cases, the presumptions are in favor of the creditors, and not in favor of the title of the wife. The mere holding of a bond is not sufficient evidence that at the time the bond purports to have been given it was recognized as a debt, and that both husband and wife intended to occupy the relation to each other of debtor and creditor. The burden is upon the wife to show that the original transaction represented a loan by her to the husband, and a contemporaneous promise on his part to pay the debt; otherwise, what was originally a gift to aid the husband in business, and used by him as a basis of credit, could subsequently, when he became involved, be converted into a debt to his wife, and thus perpetrate a fraud upon his creditors with the utmost facility and impunity. (*Kline* v. *Kline*, 103 Va. 263, 48 S. E. 882; *Spence* v. *Repass*, 94 Va. 716, 27 S. E. 583.)

"The record shows that the wife was a practicing physician in the country, and that she also conducted a small mercantile business, while the husband was engaged in farming. It appears that the wife kept, books of account, in which she had an account against her husband, consisting of items of cash charged to him at different times, and sundry other charges, such

as cow, horse, mule, sow and pigs, buggy and harness, etc. This account of the wife against the husband was the basis of the alleged consideration of $700.00 stated on the face of the deed from her husband which is now assailed by the husband's creditors. The books containing the account were, over the objection of the appellants, introduced in evidence for the purpose of establishing the wife's claim that the purchase of the real estate by her from her husband was *bona fide*, and that a valuable consideration was paid for it.

"Without passing upon the question, whether or not these books of account were admissible in evidence, it is sufficient to say, that with the aid of the books the wife has wholly failed to establish her claim as required in such cases. There is no evidence to show that the original transactions, out of which the several items of this account grew, represented a loan by her to the husband, and that there was a contemporaneous promise on his part to pay the debt. The burden is upon the wife to show that, with respect to the items of the account asserted by her, both she and her husband intended to occupy the relation to each other of debtor and creditor.

"In the light of these well settled principles, which cannot be too consistently and firmly adhered to in this class of cases, it is clear, from the record, that the deed of October 16, 1903, from John H. Reed to his wife, Ina H. Reed, must be set aside as in fraud of the rights of the appellants."

The same general statements of the law were recognized and approved in the more recent case of *Harris* v. *Carver*, 139 Va. 676, 124 S. E. 206, in which Judge Holt says:

"Mr. Harris, we have seen, was insolvent, and Mrs. Harris had nothing with which to pay this purchase

Davis *v*. Southern Distr. Co., 148 Va. 779.   785

Court]                                    Opinion.

money save what she could raise from the farm, and, but for the temporary prosperity which she, in common with all tobacco growers, enjoyed for a time, probably would not have paid at all.   The evidence shows that she paid the entire purchase price, $2,000.00, and that she paid this with tobacco raised by herself and some on the farm.   Mr. Harris paid nothing thereon.   It does appear that, his wife turned over to him a small tract for cultivation, and that he used all that he made thereon in paying actual family expenses.   It is also true that possession of this farm never went out of the Harris family.

"* * *   The plaintiff took no evidence and relies wholly upon presumptions of law.

"Hence the presumption of the law is—and this presumption is not affected by the married woman's act—that the husband is the owner of all the property, real and personal, of which the wife may be in possession during coverture, especially if they are living together as husband and wife; and to overcome this presumption, in a contest between the husband's creditors and the wife, she must show affirmatively that the property is her own, and that it was derived from a source other than her husband and in good faith, if he be insolvent, otherwise a wide door would be open to fraud."   *Yates* v. *Law*, 86 Va. 117, 9 S. E. .508.

In this case, it must be remembered that Mrs. Harris purchased the farm from a third party, and complainants endeavored by inference to show that the purchase money was furnished by the husband.

*Battle* v. *Rock*, 144 Va. 1, 131 S. E. 344, is also authority—perhaps the latest authority on this general subject.   Judge Burks here says:

"In a contest between the creditors of an insolvent

husband and the wife over a conveyance from the
husband to his wife, the presumptions are in favor
of the creditors and not of the wife, and the burden is
upon the wife to show by clear and satisfactory evi-
dence the *bona fides* of the transaction."

[4] From a careful reading of the evidence we think
it may be fairly concluded that at the time of the
conveyance from the husband to the wife he was
indebted to sundry persons, some of whom had placed
their claims in the hands of attorneys for the purpose
of forcing payment; that both C. T. Davis and Fannie
A. Davis, with several children, were living in a home
together in the usual and orderly way; that Mrs.
Davis had title to another tract of land in the county
which had also been conveyed to her by her husband
for a consideration stated to be $2,500.00, this deed
having been made about the year 1918; that the con-
veyance of the seventy-two acre tract carried a con-
sideration of $1,000.00 but is claimed by Mrs. Davis to
be in fact about $2,047.00, which is made up of sundry
items advanced by the wife during the period from
April 19, 1919, to December 8, 1921, and evidenced by
cancelled checks drawn by her and payable, some to
C. T. Davis direct, others to individuals and firms
with whom they dealt, merchants, fertilizer dealers,
*et cetera;* that some of these checks had notations
showing they were given in payment of C. T. Davis'
account, others were checks made payable to C. T.
Davis and without notations, while still others were
to third parties and without written explanation; that
at the time the several checks were drawn by the
wife and paid for her husband's indebtedness or to
him direct, there was no agreement between the parties,
that the several transactions should each or all con-
stitute loans with a contemporaneous promise to pay
back the amount borrowed.

If the above is a correct summary of the facts fairly established, then the learned chancellor in the court below was fully justified in entering the decree appealed from insofar as the first assignment of error is concerned.

An extract from the evidence of the defendant, Fannie A. Davis, seems quite sufficient to justify the conclusions reached, and this without resort to the rule which places the burden upon the wife "to show by clear and satisfactory evidence the *bona fides* of the transaction," and that the sundry checks heretofore adverted to represented a loan by her and a contemporaneous promise by the husband to repay the same.

We quote from the testimony of Mrs. Davis:

"17. Have you, beginning in 1919, up to December 8, 1921, the date of the deed from Mr. Davis to you, made any loans to your husband or paid any of your husband's debts at his instance and request?

"A. Yes.

"18. Mrs. Davis, I hand you herewith a memorandum, marked an exhibit, showing a list of debts due you by C. T. Davis and itemized by checks. I ask you to examine that list and the checks set forth on that list and state whether or not those checks represent money which you loaned C. T. Davis, partly paid direct to him and partly paid on his account for debts which he was due?

"A. Yes, sir.

"19. Mrs. Davis, the first of these items is dated April 19, 1919. Up to December 8, 1921, the date of the deed in question, the aggregate amount due on these checks, with interest, is $2,047.28. Were these amounts due by your husband?

"A. Yes, sir.

"20. Has he ever paid them back to you except by the deed?

"A. No, sir, not one cent. .

"21. The checks made payable to C. T. Davis, which appear on the statement here, represent *then* money which you loaned your husband directly?

"A. Yes, sir.

"22. On January 10, 1920, there is a check marked 'exhibit No. 3,' for $539.54 paid to the State Bank of Kenbridge. Do you know what that check was paid to this bank for?

"A. For guano that he used, him and his share-hand."

[5] From these extracts from the evidence it appears that Mrs. Davis gave her husband checks and paid numerous debts due by her husband to third parties, but the record fails to show a single instance where the husband ever recognized any of the payments made to him or for him as debts due his wife and made any contemporaneous promise to pay same. Under such circumstances the law presumes the funds delivered to the husband to be gifts and not loans. *Miller* v. *Cox*, 38 W. Va. 747, 18 S. E. 960; *Zinn* v. *Law*, 32 W. Va. 447, 9 S. E. 871; *Kline* v. *Kline*, 103 Va. 263, 48 S. E. 882.

A stronger case for the application of the rule requiring clear and satisfactory evidence in order to support the conveyance could hardly be imagined. The family lived together and worked indiscriminately on the farm owned by the wife and on the farm owned by the husband, while he conducted a country store in Kenbridge in addition to his farming operations. Of the twenty-four checks, aggregating with interest $2,364.00 which have been produced by the wife to support her claim that the deed to her for the farm was *bona fides* and took precedence over the claims of creditors, seven were payable to C. T. Davis and two

had endorsements showing they had paid some debts for which he was liable; all of the others were to various and sundry persons with nothing to connect them with the husband save the bare statements of the husband and wife made after the deed in question had been attacked by the creditors.

I quote from Mrs. Davis' testimony:

"12. Where had you kept this cash prior to paying it to Mr. Davis?

"A. That is none of your business where I kept it.

"13. Is that the best answer you will make to my question?

"A. That is the best one, for it is none of your business—that ain't concerning this at all.

"14. Did you pay Mr. Davis anything at all at the time he conveyed you this seventy-two acres of land?

"A. Did I pay anything at all? I paid him the thousand dollars—don't you see the thousand dollars in the deed.

"15. How did you pay this $1,000.00, in cash or by check?

"A. Paid it in checks. I have got checks to show for it.

"16. Then, as I understand it, the checks that you have testified about are the checks that you claim to have paid him for this land?

"A. Certainly.

"17. The first check I notice here is dated April 19, 1919, payable to C. T. Davis, $25.00. What was that check for, Mrs. Davis?

"A. Who is it to?

"18. C. T. Davis?

"A. I loaned him the money.

"19. Loaned him that amount?

"A. Sure.

790 Davis *v.* Southern Distr. Co., 148 Va. 779.

Opinion.                                    [Special

"20. Well, the next check is one to Adams, Harris Company for $100.00. I believe you testified that this was for C. T. Davis' account?

"A. Sure.

"21. For what did C. T. Davis owe Adams, Harris Company?

"A. For groceries and different things.

"22. Where were these groceries and different things used?

"A. In the store—they won't used for my benefit.

"23. Another check to the State Bank for $64.30. What was that check given to the State Bank for?

"A. For a note, I suppose, that he had in bank.

"24. Do you know positively that it was on account of C. T. Davis?

"A. Certainly. I haven't got any in there. I pay my bills cash."

It seems clear to us from a careful reading of the record that the defendants in the court below have failed to present any evidence to support the claim of the wife that the deed was made to her for a consideration valid in law as against creditors of the husband, and we think the decree appealed from is clearly right in so declaring.

[6] The doctrine in Virginia which places the burden upon those attempting to support a conveyance from the husband to the wife as against existing creditors of the husband, is too well ingrained in our jurisprudence to require further comment, and while the Code, section 6210, has made the testimony of either consort competent in controversies of this character, it has in no sense changed the burden or shifted the presumptions recognized as early as *Yates* v. *Law, supra,* and restated as recently as in *First National Bank* v. *House,* 145 Va. 149, 133 S. E. 664.

[7-9] The second assignment of error is based upon
the failure of the court to hold that the deed of February
24, 1920, from P. I. Davis to C. T. Davis, her nephew,
created a resulting trust in favor of Mrs. Fannie A.
Davis, and therefore the deed from him to his wife
was a conveyance in furtherance of the trust.

"Where land is purchased and paid for by one
person while the conveyance is made to another, the
law implies a trust for the benefit of the former   *   *
*   *   *.

"A resulting trust arising from the purchase and
payment by one and conveyance to another, may be
proved by parol evidence, but it must be clear and
convincing." *Straley* v. *Esser*, 117 Va. 135, 83 S. E.
1075.

The position taken here is in striking contrast with
that of appellant C. T. Davis.   Hear him as he speaks
on this subject:

"9. When you gave her the deed to the seventy-two
acres of land you recited a consideration of $1,000.00.
In making her that deed what were you undertaking
to do with reference to the debts that you owed her?

"A. I wanted to make her safe for the money she
had loaned me,—she required it and I did so.

"10. From whom did you get this seventy-two acres
of land?

"A. From my aunt."

To the same effect is Mrs. Davis' testimony hereto-
fore quoted in this opinion.

Again in the joint answer of the husband and wife
they say:

"Respondents deny that the deed between C. T.
Davis and Fannie A. Davis was fraudulent.   Re-
spondents allege that the deed was made in good faith
for a valuable consideration in law, and that the one

thousand dollars stated as the consideration in said deed was actually paid by Fannie A. Davis to C. T. Davis; that she had earned the money by hard and honest toil; that she had made crops of tobacco and other things for a number of years past independently of the crops made by her husband, C. T. Davis, and that the money which she paid for said tract of land was money which she had earned, which was hers absolutely and entirely."

The idea of a resulting trust seems not to have been suggested in the pleadings; is in irreconcilable conflict with the position taken in the answer, as well as in the first assignment of error, and has no basis in fact worthy of consideration. *Chesapeake and Ohio Railway Company* v. *Rison,* 99 Va. 18, 37 S. E. 320; *Simpson* v. *Dugger,* 88 Va. 963, 14 S. E. 760.

The decree appealed from is clearly right.

*Affirmed.*

Christian, J., dissenting:

I regret I will have to dissent in this case. It was a suit to set aside a deed of conveyance from a husband to his wife by virtue of section 5185, Code of 1919.

In the case of *Battle* v. *Rock,* 144 Va. 1, 131 S. E. 344, Judge Burks, one of the revisors of the Code, has laid down the rules of law governing such cases since husband and wife have been permitted to testify. It should be noted that interest was the reason of their disqualification formerly.

The reason of the statute is thus stated therein in substance: "The principle upon which voluntary conveyances are held void as to existing creditors is that a man shall be just before he is generous, but it is as much his duty to be just to his wife as to other persons."

The rule of evidence is thus stated: "In a contest

between the creditors of an insolvent husband and the wife over a conveyance from the husband to his wife, the presumptions are in favor of the creditors and not of the wife, and the burden is upon the wife to show by clear and satisfactory evidence the *bona fides* of the transaction."

As to the matter of corroboration, prior to the adoption of the Code of 1919, neither the husband nor wife could testify in a suit by creditors of the husband to set aside a deed of the husband to the wife as in fraud of creditors, but now both are fully competent, and the case is not within the purview of section 6209 of the Code of 1919, requiring corroboration. The former presumptions were not removed, but husband and wife were no longer disqualified to testify as to the *facts of the transaction.*

Let us see, then, the legal definition of presumption: "A rule of law that courts and judges shall draw a particular inference from a particular fact or from particular evidence, unless and until the truth of such inference is disproved." *Ulrich* v. *Ulrich,* 136 N. Y. 120, 32 N. E. 606, 18 L. R. A. 37.

What are the facts presumed in this case, and what is the truth as shown by the evidence?

1st. That the conveyance was voluntary. The uncontradicted evidence shows that the husband was a farmer and store keeper; that the wife had a separate estate and earned money; that she from time to time gave him checks, paid his fertilizer bills, and his store bills to the amount of over $2,000.00. She was endorser upon his paper in bank, and before this suit gave a deed of trust upon the land conveyed to her, that was the subject of suit, and another tract that he had conveyed to her for valuable consideration in 1918. It would seem that the inference that the deed was voluntary has been annihilated.

2nd. But it is said, that where a husband uses his wife's money it is presumed to be a gift and not a loan, and there must be a contemporaneous promise at the time to repay. *Sledge* v. *Reed,* 112 Va.. 202, 70 S. E. 523, is cited as authority to sustain this proposition of law. This is certainly the law now as it was then, but at the time that case was decided neither husband nor wife could testify. The wife was in business for herself—kept an account on her books against her husband—the books were admitted in evidence over objection—the court held it was unnecessary to pass upon the admissibility of the account, as the wife had not shown a contemporaneous promise to pay the account. In short, their relation prevented an implied promise to pay the account.

In the case at bar, both husband and wife testified that the various advances were *loans.* I do not see what more they could have done. The word loan signifies a debt and implies a promise to repay, and indulgence in collection by the wife cannot justify disbelief of their truthfulness, when it is not contradicted by any evidence or their veracity impeached by cross-examination or proof of bad reputation.

If the creditors had proceeded in bankruptcy the wife certainly could have proven her debts. He merely gave her preference over his other creditors as he had the right to do under our law. In the language of Judge Burks, "it was as much his duty *to be just to his wife* as to other persons."

The *Carver Case* cited in the opinion, upon its facts and presumptions was stronger in favor of the creditors than this, but the wife's. testimony on the essential facts repelled the presumptions. It is more of an authority for reversal of this case than its affirmation, in my judgment.